272 F.2d 131
 NATIVE AMERICAN CHURCH OF NORTH AMERICA, a corporation,
William Peter Tsosie, Shorty Duncan, and Frank
Hanna, Jr., a minor, by and through
Frank Hanna, Sr., his next
friend, Appellants,
v.
NAVAJO TRIBAL COUNCIL, Paul Jones, individually and as
Chairman of said Tribal Council, Joe Duncan and
Sam Garnez, Appellees.
 No. 6146.
 United States Court of Appeals Tenth Circuit.
 Nov. 17, 1959.
 
 Fred M. Standley, Albuquerque, N.M. (Grantham, Spann & Sanchez; Everett M. Grantham, Albuquerque, N.M., on the brief), for appellants.
 Robert S. Griswold, Jr., Washington, D.C. (Perry W. Morton, Asst. Atty. Gen., James A. Borland, U.S. Atty., Albuquerque, N.M., J. C. Ryan, Asst. U.S. Atty., Roger P. Marquis, Department of Justice, Washington, D.C., on the brief), for appellees.
 Before MURRAH, Chief Judge, and PHILLIPS and HUXMAN, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 This action was filed in the United States District Court for the District of New Mexico by the Native American Church of North America,[1] a corporation, William Peter Tsosie, Shorty Duncan, and Frank Hanna, Jr., a minor, by and through Frank Hanna, Sr., his next friend, against the Navajo Tribal Council, Paul Jones, individually and as Chairman of said Tribal Council, Joe Duncan and Sam Garnez. The action was brought by plaintiffs on their own behalf and in behalf of all others similarly situated. In its first cause of action, the church sought to enjoin the enforcement of an ordinance adopted by the Navajo Tribal Council making it an offense to introduce into the Navajo country, sell, use or have in possession within the Navajo country, the bean known as peyote, and imposing both imprisonment and a fine for its violation.
 
 
 2
 The first cause of action alleged that from time immemorial, the church and its predecessors have used the vegetable substance, commonly known as peyote, in connection with and as a part of its religious ceremonies. It was alleged that the ordinance was void because it violated the church's rights and the rights of its members under the First, Fourth and Fifth Amendments to the United States Constitution. The prayer was that the court enjoin enforcement of the ordinance. In a second cause of action, damages were sought from Sam Garnez and Joe Duncan. As to Garnez, it was alleged that he entered Shorty Duncan's house where religious ceremonies were being conducted, without a search warrant, searched the premises and the persons there present, and arrested Duncan and others, without a warrant, and thus deprived them of their liberty and right of worship without due process of law. As to Joe Duncan, it was alleged that he, acting as a judge of the Navajo court, denied Duncan the opportunity to secure counsel or to demand a jury trial, found him guilty of violating the ordinance and assessed penalties. Judgment for damages of $5,000 was asked. The trial court sustained a motion by the defendants to dismiss plaintiff's first cause of action. The second cause of action is not in issue in this appeal.
 
 
 3
 The court predicated its judgment of dismissal on four grounds. First, that the ordinance was a valid exercise of police powers and was, therefore, not repugnant to the Constitution; second, that the Navajo Tribal Council cannot be sued without the consent of the Congress of the United States, which consent had not been given; third, that since the seat of the Government of the Navajo Tribe is in Window Rock, Arizona, the court was without jurisdiction over matters concerning the validity of the acts of the Navajo Tribal Council; and, fourth, that the face of the complaint shows a misjoinder of parties defendant and causes of action. In our view, not all of these grounds need to be discussed or considered in arriving at a decision of the case.
 
 
 4
 Much has been written with respect to the status of Indian tribes under our Government, and with respect to the jurisdiction of Federal or State courts over controversies between non-members and a tribe, or between members of a tribe, or controversies between Indian members of a tribe and the tribe as an entity. The early case of Worcester v. Georgia, 6 Pet. 515, 31 U.S. 350, 8 L.Ed. 483, is the leading case on the subject. The opinion of Chief Justice Marshall developed the subject at great length. The gist of the opinion is that Indian nations and tribes are distinct political entities, having territorial boundaries within which their authority is exclusive; that within their borders they have their own Government, laws and courts, and are not subject to the laws of the State in which they are located or to the laws of the United States, except where Federal laws are made applicable to them by Congressional enactment, and that Federal courts are without jurisdiction unless jurisdiction is expressly conferred by Congressional enactment. In United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 1112, 30 L.Ed. 228, the court sums up their status in the following language:
 
 
 5
 'They were, and always have been, regarded as having a semiindependent position when they preserved their tribal relations; not as states, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people, with the power of regulating their internal and social relations, and thus far not brought under the laws of the Union or of the state within whose limits they resided.'
 
 
 6
 These declarations by the Supreme Court have been adhered to in a long line of cases.[2]
 
 
 7
 The status of Indian nations or tribes, preserving their political entity under the decisions of the Supreme Court, has been summed up in Felix S. Cohen's Handbook of Federal Indian Law, at page 122, as follows:
 
 
 8
 'The whole course of judicial decision on the nature of Indian tribal powers is marked by adherence to three fundamental principles: (1) An Indian tribe possesses, in the first instance, all the powers of any sovereign state. (2) Conquest renders the tribe subject to legislative power of the United States and, in substance, terminates the external powers of sovereignty of the tribe, e.g., its power to enter into treaties with foreign nations, but does not by itself affect the internal sovereignty of the tribe, i.e., its powers of local self-government. (3) These powers are subject to qualification by treaties and by express legislation of Congress, but, save as thus expressly qualified, full powers of internal sovereignty are vested in the Indian tribes and in their duly constituted organs of government."
 
 
 9
 This subject was again before the Supreme Court in the late case of Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 270, 3 L.Ed.2d 251. This case involved a suit by a non-Indian against an Indian member of the Navajo tribe for goods sold to him. This action was brought in the State courts. The court reviewed the status of Indian tribes. It adhered to the principles of the Worcester case. Concerning that case, the court said, 'Over the years this Court has modified these principles in cases where essential tribal relations were not involved and where the rights of Indians would not be jeopardized, but the basic policy of Worcester has remained.' And speaking of the Navajo nation and the treaty with them, the court said, 'Implicit in these treaty terms, as it was in the treaties with the Cherokees involved in Worcester v. Georgia, was the understanding that the internal affairs over the Indians remained exclusively within the jurisdiction of whatever tribal government existed.' No law is cited and none has been found which undertakes to subject the Navajo tribe to the laws of the United States with respect to their internal affairs, such as police powers and ordinances passed for the purposes of regulating the conduct of the members of the tribe on the reservation. It follows that the Federal courts are without jurisdiction over matters involving purely penal ordinances passed by the Navajo legislative body for the regulation of life on the reservation.
 
 
 10
 But it is contended that the First Amendment to the United States Constitution applies to Indian nations and tribes as it does to the United States and to the States. It is, accordingly, argued that the ordinance in question violates the Indians' rights of religious freedom and freedom of worship guaranteed by the First Amendment. No case is cited and none has been found where the impact of the First Amendment, with respect to religious freedom and freedom of worship by members of the Indian tribes, has been before the court. In Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196, the court held that the Fifth Amendment did not apply to local legislation by the Cherokee nation. In Barta v. Oglala Sioux Tribe of Pine Ridge Reservation, 8 Cir., 259 F.2d 553, the court held that neither the Fifth nor the Fourteenth Amendments had any application to action, legislative in character, of Indian tribes imposing a tax on the use of Indian trust land, and in Toledo v. Pueblo De Jemez, D.C., 119 F.Supp. 429, the court held that deprivation of religious liberties by tribal government could not be redressed by action under the Civil Rights Act. Cohen's Handbook of Federal Indian Law, 1942, at page 124, states that restraints upon Congress or upon the Federal courts or upon the States, by the Constitution, do not apply to Indian tribal laws and courts. And, at page 181, it is stated that, 'The provisions of the Federal Constitution protecting personal liberty or property rights, do not apply to tribal action.'
 
 
 11
 The First Amendment applies only to Congress. It limits the powers of Congress to interfere with religious freedom or religious worship. It is made applicable to the States only by the Fourteenth Amendment.[3] Thus construed, the First Amendment places limitations upon the action of Congress and of the States. But as declared in the decisions hereinbefore discussed, Indian tribes are not states. They have a status higher than that of states. They are subordinate and dependent nations possessed of all powers as such only to the extent that they have expressly been required to surrender them by the superior sovereign, the United States. The Constitution is, of course, the supreme law of the land, but it is nonetheless a part of the laws of the United States. Under the philosohy of the decisions, it, as any other law, is binding upon Indian nations only where it expressly binds them, or is made binding by treaty or some act of Congress. No provision in the Constitution makes the First Amendment applicable to Indian nations nor is there any law of Congress doing so. It follows that neither, under the Constitution or the laws of Congress, do the Federal courts have jurisdiction of tribal laws or regulations, even though they may have an impact to some extent on forms of religious worship.
 
 
 12
 Affirmed.
 
 
 
 [1]
 Herein called the church
 
 
 [2]
 Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., 8 Cir., 231 F.2d 89; Ex parte Crow Dog. 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030; Barta v. Oglala Sioux Tribe of Pine Ridge Res., 8 Cir., 259 F.2d 553; United States v. United States Fidelity & Guaranty Co., 300 U.S. 506. 60 S.Ct. 653, 84 L.Ed. 894; Toledo v. Pueblo De Jemez, D.C., 119 F.Supp. 429; Talton v. Mayes, 163 U.S. 376, 377, 16 S.Ct. 986, 41 L.Ed. 196; Adams v. Murphy, 8 Cir., 165 F. 304; Thebo v. Choctaw Tribe of Indians, 8 Cir., 66 F. 372
 
 
 [3]
 McCollum, People of State of Ill. ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649; Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954