Sarah Jean Chamberlain **SLATTERY, for herself and as parent, natural guardian, and next of friend of Billy Byron Slattery and Kenneth Kurt Slattery, her minor sons, Appellant,**

v.

**ARAPAHOE TRIBAL COUNCIL, also known as Arapahoe Business Council, and U. S. Secretary of the Interior, Walter J. Hickel, Appellees.**

Barbara M. **PINNOW, for herself and as parent, natural guardian, and next of friend of Elmer Hans Pinnow, et al., Appellant,**

v.

**SHOSHONE TRIBAL COUNCIL, also known as Shoshone Business Council, and U. S. Secretary of the Interior, Walter J. Hickel, Appellees.**

Nos. 583–70, 584–70.

United States Court of Appeals, Tenth Circuit.

Dec. 30, 1971,

Ernest Wilkerson, Casper, Wyo., for appellants.

Marvin J. Sonosky, Washington, D. C., for appellee Shoshone Business Council.

Richard A. Baenen, Washington, D. C. (Glen A. Wilkinson, of Wilkinson, Cragun & Barker, and R. Anthony Rogers, Washington, D. C., of counsel, on the brief), for appellee Arapahoe Business Council.

Dirk D. Snel, Atty., Dept. of Justice (Shiro Kashiwa, Asst. Atty. Gen., Richard V. Thomas, U. S. Atty., and Jacques B. Gelin, Atty., Dept. of Justice, on the brief), for appellee Secretary of the Interior, Walter J. Hickel.

Before SETH, HOLLOWAY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

The issue here to be resolved is whether the United States District Court for the District of Wyoming has jurisdiction to hear a controversy pertaining to certain tribal enrollment practices of the Arapahoe and Shoshone Tribes. The trial court held it did not have such jurisdiction. Pinnow v. Shoshone Tribal Council, D.C., 314 F.Supp. 1157 (1970). We agree that the trial court did not have jurisdiction to hear the particular controversy sought to be presented to the court.

Whether the trial court had jurisdiction over the subject matter of the two complaints here under consideration is to be determined from the *facts* alleged in the complaints, without regard to any conclusory allegations of jurisdiction. Groundhog v. Keeler, 442 F.2d 674 (10th Cir. 1971). We shall first summarize the allegations in the Slattery complaint.

Sarah Jean Chamberlain Slattery instituted an action for herself and her two minor sons, Billy Byron, age 12 and Kenneth Kurt, age 10, and alleges that she is an enrolled member in the Arapahoe Tribe and resides on the Wind River Indian Reservation in Fremont County, Wyoming. The action is directed against the Arapahoe Tribal Council and the then Secretary of the Interior, Walter J. Hickel. The gist of the complaint is the conclusory allegation that the Council rejected "arbitrarily and without just cause" the applications made by Mrs. Slattery to enroll her two sons in violation of the so-called Indian Bill of Rights, 25 U.S.C. §§ 1301, 1302 and 1303.

From the complaint we learn that the Arapahoe tribal enrollment ordinance requires, *inter alia*, that in order to become an enrolled member of the tribe the application for enrollment, together with a birth certificate, be made within two years from the date of birth of the person sought to be enrolled and that the applicant possess at least one-quarter degree of Indian blood. From the four corners of the complaint we do not know the precise basis for rejection by the Council of the applications made on behalf of Billy Byron and Kenneth Kurt, though, as above indicated, there is conclusory allegation that the applications were rejected arbitrarily and without just cause. The relief prayed for was the issuance of a writ in the nature of mandamus directing and requiring the tribal council to "institute and implement fair, just, and legal Tribal ordinances, laws and rulings whereunder fair and impartial treatment shall be given to all * * *."

In response to the Slattery complaint the defendants filed a motion to dismiss and in support thereof filed certain affidavits. From the latter we learn that the application for tribal enrollment in behalf of Billy Byron was rejected because he did not meet the requirement that he possess one-quarter degree Indian blood, his mother possessing one-quarter degree Indian blood and his father possessing no Indian blood. And for the same reason Kenneth Kurt was also ineligible for tribal enrollment. There was no counter affidavit concerning the degree of Indian blood possessed by Billy Byron or Kenneth Kurt and the case is presented to us on the basis that both possess only one-eighth degree of Indian blood.

The Pinnow complaint parallels in all essentials the one filed by Slattery. Barbara Pinnow is an enrolled member of the Shoshone Tribe and resides on the reservation in Wyoming. She sought tribal enrollment for her eleven children and alleged that all such applications were rejected arbitrarily and without cause in violation of rights guaranteed by the Indian Bill of Rights. Again, from the complaint itself, we are not advised as to the reason why these applications were denied. However, from the affidavits attached to the defendants' motion to dismiss we are advised that each of the eleven applications was denied for two reasons: (1) None was filed within two years from the date of the applicant's birth as required by Shoshone tribal enrollment ordinances; and (2) none of the applicants possessed one-quarter degree Indian blood as also required by tribal ordinance, Mrs. Pinnow possessing one-quarter degree Shoshone blood and her husband, the father of the applicants, possessing no Indian blood. There are no counter affidavits challenging the basis upon which the Pinnow applications were denied.

The pleadings then disclose the following facts: (1) Both the Arapahoe and Shoshone Tribes have promulgated tribal enrollment ordinances approved by the Secretary of the Interior which require that one who would be an enrolled tribal member must, *inter alia*, possess one-quarter degree of Indian blood and the application for enrollment must be made within two years from the date of birth of the individual sought to be enrolled; (2) none of the children of Mrs. Slattery and Mrs. Pinnow possess one-quarter degree Indian blood and the applications for all the Pinnow children and one of the Slattery boys were filed more than two years from the date of birth of the child sought to be enrolled; and (3) all of the aforesaid applications were denied by the tribal councils because of noncompliance with the blood requirement.

As indicated, the prayer for relief is exceedingly broad and, we would add, somewhat vague. However, upon hearing in the trial court, as upon oral argument here, counsel does not challenge the tribal enrollment ordinances, as such, and apparently the real thrust of the two

actions is that the tribal enrollment ordinances have not been applied to others with the same vigor as they have been to the Slattery and Pinnow children. In this connection affidavits were filed in opposition to the defendants' motion to dismiss which cited instances where other individuals were either granted or denied tribal enrollments under circumstances which counsel claims shows that the Slattery and Pinnow children were dealt with unfairly. These affidavits, however, were singularly inconclusive and in nowise tended to show that the rejection of the several applications made on behalf of the Slattery and Pinnow children resulted from "a continuing and overall pattern pursued by defendant Council of discriminatory, unfair, and inequitable treatment by defendant Council of the members of the Arapahoe [and Shoshone] Tribe of Indians in violation of plaintiff's rights" as set forth in the Indian Bill of Rights, as was alleged in each complaint. Indeed, the affidavits filed in behalf of the plaintiffs were directed in the main toward that section of the tribal enrollment ordinance of the Arapahoe Tribe (though not the Shoshone Tribe) which requires that the father of the child sought to be enrolled be an enrolled member of the tribe. That particular requirement of the Arapahoe tribal enrollment ordinance is not directly involved in the instant proceeding inasmuch as the Slattery children did not meet the tribal requirement of one-quarter degree Indian blood. So, insofar as the complaints are concerned, there is only the conclusory allegation that the applications in behalf of the Slattery and Pinnow children were rejected arbitrarily and without just cause. However, from the pleadings as a whole we learn that the reason each of these applications was rejected was because none of the applicants possessed the requisite degree of Indian blood.

It was on this state of the pleadings that the trial court granted the defendants' motion to dismiss, concluding that it did not have jurisdiction of the controversy. As indicated, we agree with the trial court's dismissal of the two actions.

Laying aside for the moment the possible effect of the Indian Bill of Rights on the exercise by an Indian Tribe of its power of self-government, the rule prior to the passage of that Act certainly was that the federal courts did not have jurisdiction over an intratribal controversy and that a tribe had complete authority to determine all questions of its own membership. Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 321 F.2d 767 (10th Cir. 1963), and Martinez v. Southern Ute Tribe of Southern Ute Reservation, 249 F.2d 915 (10th Cir. 1957). Indeed, counsel concedes that under the rule of Martinez the trial court was without jurisdiction to hear the matter sought to be raised in the two complaints.

Counsel argues, however, that the rule of Martinez was changed in 1968 when Congress enacted the Indian Bill of Rights, 25 U.S.C. § 1302. The particular section of the statute relied on for conferring jurisdiction on the trial court is § 1302(8), which provides that no Indian tribe in exercising its powers of self-government shall deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law. It may well be that tribal enrollment practices are now subject to the statutory requirements of equal protection and due process as provided in 25 U.S.C. § 1302(8). See The Indian Bill of Rights and the Constitutional Status of Tribal Governments, 82 Harv. L.Rev. 1343 (1969). However, the existence of such restraint and the extent thereof need not here be decided. Rather, the instant controversy is resolved by our determination that the amended complaints of Slattery and Pinnow, together with the affidavits filed in support of and in opposition to the complaints, fail to disclose any denial of due process or

equal protection. In this regard the trial court specifically held that the pleadings failed to disclose such denial, and we agree.

▮▮▮▮ The pleadings show that the Slattery and Pinnow children did not meet the tribal enrollment requirement that they possess one-quarter degree Indian blood and the rejection of these several applications on that ground does not constitute arbitrary action taken by the tribal council without just cause nor can it under any stretch of the imagination amount to a denial to the plaintiffs of the equal protection of the tribe's laws or constitute a taking of the plaintiffs' liberty or property without due process of law as provided in 25 U.S.C. § 1302 (8). Rather, the pleadings show clearly that these several applications were rejected by the tribal council acting in accord with a tribal enrollment ordinance which is not itself under attack. Under such state of the pleadings the plaintiffs cannot invoke the Indian Bill of Rights as conferring jurisdiction on the trial court. *See* Groundhog v. Keeler, *supra,* where we generally observed that the Indian Bill of Rights was concerned primarily with tribal administration of justice and the imposition of tribal penalties and forfeitures and not with the specifics of tribal structure or officeholding. In that case we went on to hold that the allegations that the Principal Chief of the Cherokee Tribe was not a Cherokee by blood and that he was appointed, and not elected, were insufficient to invoke the sanctions found in the Indian Bill of Rights.

Having determined that the allegations of *fact* in the two complaints here under consideration, when viewed in the light of the various affidavits filed by parties to the proceeding, are insufficient to bring into play the Indian Bill of Rights, the rule of *Martinez* controls and the trial court was correct in its determination that it did not have jurisdiction.

Judgments affirmed.