Molley McCURDY et al., Plaintiffs,

v.

Hubert STEELE et al., Defendants.

No. C 206–72.

United States District Court,
D. Utah, Central Division.

Heard Sept. 19, 1972.

Decided Jan. 2, 1973.

Thomas E. Luebben, Jr., Native American Legal Defense and Education Fund, Albuquerque, N. M., for plaintiffs.

H. Ralph Klemm, Asst. U. S. Atty., Salt Lake City, Utah, for defendants Zuni, Garmon, Secakuku and Stevens.

Stephen G. Boyden, Boyden and Kennedy, Salt Lake City, Utah, for defendants Hubert Steele, Jim Steele, Bob Steele, Henry Pete, Leo Pete, Lillie Pete, Cynthia Keoke and Raymond Tom.

## OPINION

ALDON J. ANDERSON, District Judge.

Plaintiffs seek official recognition as the governing business council of the Confederated Tribes of the Goshute Reservation. They are confronted by defendants' motions to dismiss.

The complaint alleges that in early April, 1972, defendants Jim Steele, Hubert Steele, Leo Pete and Henry Pete constituted the business council. In the face of a recall petition, submitted pursuant to the Goshute Constitution, this business council declared a new election and appointed an election board, containing Jim Steele, Hubert Steele and Henry Pete, to supervise the election, also pursuant to the Goshute Constitution. Plaintiffs were the only persons to file as candidates in this election under the procedure described in Art. 5, § 5 of the Goshute Constitution. However, after the votes were counted, it appeared that write-in candidates, including the three members of the election board, had outpolled the plaintiffs. Subsequently, the election board refused to certify anyone as having won the election although Art. 5, § 6 of the Goshute Constitution allegedly requires the board to do so and although certification was demanded in an election protest petition submitted by plaintiffs. Ultimately, plaintiffs allege, the defendants who had previously sat on the business council and continued to act as its members determined to schedule another election and appoint a new election board, containing defendants Lillie Pete, Cynthia Keoke and Raymond Tom. Defendants Jose A. Zuni, Alph H. Secakuku, Jim Stevens, Nyal Garmon and Bob Steele are employees of The Bureau of Indian Affairs (hereinafter sometimes the "Bureau"). They have refused to deal with plaintiffs, have continued to recognize the defendants acting as the business council and have conspired to deprive the plaintiffs of their office. Finally, plaintiffs allege that, pursuant to 25 C.F.R. § 2, they appealed to the Area Director the decision of the defendant Bureau employees not to recognize their office but were informed that such an appeal cannot be considered until the election board certifies the winning candidates. No appeal from this decision was taken.

Plaintiffs claim violations of Title II of the Civil Rights Act of 1968, 25 U.S. C.A. §§ 1301–03 (Supp.1972) (hereinafter, the "Indian Civil Rights Act"), the Fifth Amendment and 42 U.S.C.A. § 1985(3). Jurisdiction is invoked pursuant to 5 U.S.C.A. §§ 701–06 and 28 U.S.C.A. §§ 1331, 1343(1), (4) and 1361. Plaintiffs ask the court for mandamus and equitable relief which would install them as the sole members of the business council, require their recognition as such, and void the actions of defendants inconsistent with plaintiffs' office and recognition.

## I

### The Indian Civil Rights Act

■ The federal courts have traditionally avoided involvement in intratribal controversies. This policy is consistent with the present federal objective of preserving the Indian tribes as self-governing, culturally autonomous units.[1] The Indian Civil Rights Act appears to have been tailored by Congress to the purpose of enhancing the civil liberties of individual Indians without unduly undermining Indian self-government and cultural autonomy.[2] The law incorporates guarantees found in the Bill of Rights with regard to certain basic liberties including due process, equal protection, free exercise of religion, freedom of speech and safeguards during crim-

1. See e. g., Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); Kills Crow v. United States, 451 F.2d 323, 326–327 (8th Cir. 1971); 25 U.S. C.A. §§ 476–77; Note, The Indian Bill of Rights and the Constitutional Status of Tribal Governments, 82 Harv.L.Rev. 1343, 1359–60 and hearings cited (1969).

2. See generally, Note, The Indian Bill of Rights and the Constitutional Status of Tribal Governments, supra note 1.

inal proceedings.[3] But the Senate committee deleted restrictions contained in the proposed statute upon the establishment of religion and the use of racial voting classifications when it appeared that the first restriction would undermine Indian theocracies and the second would undermine tribal cultural autonomy generally.[4] Furthermore, the record suggests some concern at least that those guarantees incorporated by the Indian Civil Rights Act not be unduly disruptive of tribal culture.[5] It would thus appear that the Indian Civil Rights Act is properly considered in the context of federal concern for Indian self-government and cultural autonomy:[6] Its guarantees of individual rights should, where possible, be harmonized with tribal cultural and governmental autonomy.

Plaintiffs claim that the provisions of the Goshute Constitution with respect to the qualification of candidates, certification of election results and the procedures for removal from office have been violated by the defendants acting as business council and election boards. As a result, according to plaintiffs, their rights to equal protection of tribal law and due process under the Indian Civil Rights Act, 25 U.S.C.A. § 1302(8), have been denied.

The present dispute is not controlled by the leading cases in this circuit of Slattery v. Arapahoe Tribal Council, 453 F.2d 278 (10th Cir. 1971), and Groundhog v. Keeler, 442 F.2d 674 (10th Cir. 1971). In *Slattery*, 453 F.2d at 281, it was claimed that "tribal enrollment ordinances [had] not been applied to others with the same vigor" as they had been applied to plaintiffs. However, the pleadings revealed that plaintiffs had in fact not met the enrollment requirements and further showed no arbitrary application of the requirements in plaintiffs' case. On this record, the court dismissed for lack of jurisdiction noting:

It may well be that tribal enrollment practices are now subject to the statu-

---

3. 25 U.S.C.A. § 1302 provides:
   § 1302 Constitutional rights
   No Indian tribe in exercising powers of self-government shall—
   (1) make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;
   (2) violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized;
   (3) subject any person for the same offense to be twice put in jeopardy;
   (4) compel any person in any criminal case to be a witness against himself;
   (5) take any private property for a public use without just compensation;
   (6) deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense;

   (7) require excessive bail, impose excessive fines, inflict cruel and unusual punishments, and in no event impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of six months or a fine of $500, or both;
   (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
   (9) pass any bill of attainder or ex post facto law; or
   (10) deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons.

4. Note, The Indian Bill of Rights and the Constitutional Status of Tribal Governments, *supra* note 1 at 1359 and n. 78.

5. *Id.* and n. 77. Some such guarantees might be adapted to the Indians through the application of general rules of fairness rather than strict rules of procedure. *See id.* at 1352–53.

6. This concern is further evinced by the passage of 25 U.S.C.A. §§ 1321–31 (Supp. 1972) which authorize the states to assume jurisdiction of disputes between Indians in Indian country—but only with the consent of the tribes.

tory requirements of equal protection and due process as provided in 25 U.S.C. § 1302(8). (Citation omitted.) However, the existence of such restraint and the extent thereof need not here be decided. Rather, the instant controversy is resolved by our determination that the amended complaints of Slattery and Pinnow, together with the affidavits filed in support of and in opposition to the complaints, fail to disclose any denial of due process or equal protection. In this regard the trial court specifically held that the pleadings failed to disclose such denial, and we agree.

Slattery v. Arapahoe Tribal Council, *supra*, 453 F.2d at 281–282.

In *Groundhog*, the court properly rejected plaintiffs' attack upon certain basic Cherokee election laws involving racial restrictions, noting that the Indian Civil Rights Act was not intended to impose Fifteenth Amendment standards upon Indian tribes.[7] The court further noted that plaintiffs failed to allege procedural infirmities, such as failure of notice, in the Cherokee elections and concluded that the equal protection clause of Indian Civil Rights Act had not been violated since "the allegations of the complaint do not show a denial to the plaintiffs of the equal protection of any of the Cherokee laws." Groundhog v. Keeler, *supra*, 442 F.2d at 682–683. The present dispute, in contrast to *Slattery* and *Groundhog*, centers on adequately pleaded claims of unequal application of tribal procedural laws.

■ Under 25 U.S.C.A. § 1302: "No Indian tribe in exercising powers of self-government shall—(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." The alleged conduct complained of here squarely offends the usual meaning of equal protection and due process. *See e. g.*, Hadnott v. Amos, 394 U.S. 358, 361–364, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969); Briscoe v. Kusper, 435 F.2d 1046, 1054–1056, 1058 (7th Cir. 1970); *cf. e. g.*, Bluth v. Laird, 435 F.2d 1065, 1071 (4th Cir. 1970). The usual meaning of these terms may be modified in the present context in light of the federal concern for tribal cultural and governmental autonomy. Thus, for instance, usual standards of equal protection and due process may be modified where their imposition otherwise would threaten basic tribal interests.[8] Where, as here, plaintiffs seek compliance with existing tribal procedures, application of flexible equal protection and due process safeguards of the Indian Civil Rights Act appears appropriate. *See e. g.*, Solomon v. La Rose, 335 F.Supp. 715, 722–723 (D.Neb.1971) (due process safeguards of the Indian Civil Rights Act applied to violations of tribal constitution by tribal council which allegedly expelled or excluded certain of its elected members, invalidated an election and scheduled a new election).

■ However, defendants suggest other, more drastic modifications of traditional due process and equal protection which would remove the impact of these concepts from the present dispute. It is first argued that Congress in the Indian Civil Rights Act limited these concepts to criminal proceedings only. This suggestion may stem from the accurate observation in *Slattery* that the Indian Civil Rights Act "was concerned primarily with tribal administration of justice and the imposition of tribal penalties . . . and not with the specifics of tribal structure or officeholding." Slattery v. Arapahoe Tribal Council, *supra*, 453 F.2d at 282, *citing* Groundhog v. Keeler, *supra*, 442 F.2d at 682. However, there is no indication that this

---

7. Groundhog v. Keeler, 442 F.2d 674, 682 (10th Cir. 1971); *see* note 4 *supra* and accompanying discussion.

8. For example, the Indian Civil Rights Act guarantees the right to counsel in criminal proceedings only at the defendant's own expense. 25 U.S.C.A. § 1302 (6). *See also* notes 2–5 *supra* and accompanying text.

"primary" emphasis was intended to be exclusive. Indeed, as noted above, the *Slattery* court, 453 F.2d at 281, suggested that tribal enrollment practices may now be subject to equal protection and due process standards. Certainly the congressional hearings on the statute reveal a concern for matters other than criminal. *E. g.,* Hearings on H.R. 15419, 15122, S. 1843 Before a Subcomm. of Indian Affairs of the Comm. on Interior and Insular Affairs, 90th Cong., 2d Sess. (1968): "Rights of Members of Indian Tribes" at 15–17, quoted in Solomon v. La Rose, *supra,* 335 F.Supp. at 718–721 (discussing the deprivation of Indian rights in matters of religion, taxation, free speech and tribal membership as well as in criminal proceedings). This concern is strongly reflected in the statute itself which vouchsafes, in addition to certain criminal procedures, freedoms of religion, speech, press and assembly, and prohibits the taking of private property for a public use without just compensation or the taking of property without due process of law. 25 U.S.C.A. § 1302, quoted in note 3 *supra.* To be effective, each of these guarantees and prohibitions must often operate in a civil context, and some, almost exclusively in such a context. To limit their application to criminal proceedings would be to render them largely inefficacious. Defendants next suggest that even if the statute applies to more than criminal matters, it does not apply in the area of tribal elections. *See* Groundhog v. Keeler, *supra,* 442 F.2d at 682. This position appears based upon congressional exclusion from the statute of Fifteenth Amendment guarantees. However, such exclusion was mandated by a congressional desire to preserve the ethnic identity of Indian tribes from charges of racial discrimination, as discussed earlier, and to preserve tribal governmental structure from attacks designed to install an election process where none existed. There is no indication of congressional purpose to allow tribal governments to ignore their own election rules by exempting them from the equal protection and due process guarantees of the Indian Civil Rights Act. Indeed, there appears to be no logical foundation for such a claim.

While application of the Indian Civil Rights Act to the present claim against those defendants acting as business council and election board members appears consonant with the plain meaning of the statute and with congressional purposes underlying it, certain jurisdictional questions remain to be resolved.

■ It has been argued that this court has no general jurisdiction over civil actions brought under the statute since it expressly grants jurisdiction to federal courts only in habeas corpus matters. 25 U.S.C.A. § 1303. Acceptance of this argument would have the anomalous effect of emasculating the guarantees vouchsafed by the statute in subsections (1), (5) and (8) of 25 U.S.C.A. § 1302. It appears more likely that Congress included a specific habeas corpus provision in order to overcome the apparent denial of such a right under preexisting law, 28 U.S.C.A. § 2241,[9] while relying on the similarly preexisting jurisdictional grant of 28 U.S.C.A. § 1343 (4) to implement new guarantees under the doctrine of Jones v. Alfred H. Mayer Company, 392 U.S. 409, and 414 n. 13, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).[10]

---

9. *But cf.,* Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965).

10. Some courts have also found general civil jurisdiction under 28 U.S.C.A. § 1331. *E. g.,* Dodge v. Nakai, 298 F.Supp. 26, 28 (D.Ariz.1969). *Contra,* Pinnow v. Shoshone Tribal Council, 314 F.Supp. 1157 (D.Wyo.1970), aff'd on other grounds sub nom., Slattery v. Arapahoe Tribal Council, 453 F.2d 278 (10th Cir.

1971). In Groundhog v. Keeler, *supra* note 7, the court declined to find jurisdiction under 28 U.S.C.A. § 1331 on the narrow ground that plaintiffs' claim was "so lacking in substance" as to raise no substantial federal question. *Id.* at 678. The court also suggested that the definitional section of the Indian Civil Rights Act, 25 U.S.C.A. § 1301, was "expressly limited to actions in the nature of mandamus." *Id.* at 683. While the intended

Solomon v. La Rose, *supra*, 335 F.Supp. at 721. *Accord*: Luxon v. Rosebud Sioux Tribe of South Dakota, 455 F.2d 698, 699–700 (8th Cir. 1972); Loncassion v. Leekity, 334 F.Supp. 370, 372–373 (D.N. Mex.1971); Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, City of Browning, 301 F.Supp. 85, 89 (D. Mont.1969); Dodge v. Nakai, 298 F. Supp. 26, 28 (D.Ariz.1969). *Contra*: Pinnow v. Shoshone Tribal Council, 314 F.Supp. 1157 (D.Wyo.1970), aff'd on other grounds sub nom., Slattery v. Arapahoe Tribal Council, *supra*.

■ Defendants acting as business council and election boards are sued because of acts performed in their official tribal capacities or in their purported official capacities and thus may be reached under the Indian Civil Rights Act which regulates the actions of tribal governments. Since the disputed official acts are claimed to be *ultra vires*, in violation of the Goshute Constitution, it is not necessary to join the tribe itself. *Cf. generally*, Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 215 (1963); Larson v. Domestic and Foreign Commerce Corporation, 337 U.S. 682, 69 S. Ct. 1457, 93 L.Ed. 1628 (1949); 3A Moore's Federal Practice ¶ 19.15 (1970) and cases cited.

■ In any event, in view of the foregoing discussion, invocation of tribal sovereign immunity as against the joinder of the tribe or the application of the statute to these defendants would be inapt. *See, id.* Tribal sovereign immunity is a venerable doctrine which effectively insulates tribal culture and governmental autonomy. *See generally e. g.*, Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L. Ed.2d 251 (1959); Motah v. United States, 402 F.2d 1 (10th Cir. 1968); Native American Church of North America v. Navajo Tribal Council, 272 F.2d 131 (10th Cir. 1959). However, the doctrine is subject to congressional modification. *E. g.*, Williams v. Lee, *supra*, 358 U.S. at 233, 79 S.Ct. 269; United States v. United States Fidelity & Guaranty Company, 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 and cases cited (1940); Native American Church of North America v. Navajo Tribal Council, *supra*, 272 F.2d at 133–134. The Indian Civil Rights Act, which expressly limits every "Indian tribe in exercising powers of self-government," 25 U.S.C.A. § 1302, is such a modification. *E. g.*, Loncassion v. Leekity, *supra*, 334 F.Supp. at 373.

■ Notwithstanding this court's jurisdiction under the Indian Civil Rights Act, defendants urge the inappropriateness of these proceedings since plaintiffs have not exhausted their tribal remedies. This argument finds support in the apparent congressional intention, reflected in the statute, to preserve the integrity of tribal governmental structure. However, this intention must be balanced by the central purpose of the Indian Civil Rights Act: the vindication, in federal courts if necessary, of civil rights heretofore denied tribal members. It appears from the present record that the Confederated Tribes of the Goshute Reservation have no Goshute judge and rely instead upon the referral use of a Shoshone judge, for penal matters at least. A judicial system for the hearing of matters such as those in question apparently does not exist. Such matters would most likely come before the business council itself. Thus, in the present context, tribal remedies appear inadequate and need not be exhausted. *Cf. e. g.*, Carter v. Stanton, 405 U.S. 669, 670–671, 92 S.Ct. 1232, 31 L.Ed.2d 569 and cases cited (1972); Houghton v. Shafer, 392 U.S. 639, 640, 81 S.Ct. 2119, 20 L.Ed.2d 1319 (1968).

The claims under the Indian Civil Rights Act against those defendants acting as business council and election board members are properly before this court.

import of this statement upon the other, substantive provisions of the statute is unclear, it appears that the plaintiffs in

*Groundhog* did not argue and the court did not address itself to the jurisdictional relevance of 28 U.S.C.A. § 1343(4).

## II

### The Fifth Amendment

Plaintiffs claim that their rights under the Due Process Clause of the Fifth Amendment have been violated by the defendant employees of the Bureau of Indian Affairs. The alleged violations principally inhere in defendants' refusal to recognize plaintiffs as members of the tribal business council and defendants' advocacy of a new election to "clear the air" instead of conformance with the election and recall procedures allegedly mandated by the Goshute Constitution. Considered analytically, plaintiffs' claims under the Due Process Clause appear based upon the following logic: Congress has enacted the Indian Civil Rights Act which requires tribal government to administer the Goshute Constitution fairly. By encouraging and supporting a tribal breach of the Indian Civil Rights Act, the federally employed defendants have abridged plaintiffs' Fifth Amendment right to due process under the statute. In addition, plaintiffs charge generally that defendants' conduct violated due process in connection with the federal laws and Bureau regulations touching upon the instant dispute.

[9, 10] While the provisions of the Fifth Amendment generally do not bind tribal governments,[11] the federal government is limited, at least by a flexible application of that amendment, in its dealings with the Indians.[12] Plaintiffs' claim is cognizable if supported by an appropriate grant of jurisdiction[13] and if not barred by sovereign immunity.

28 U.S.C.A. § 1331 grants this court jurisdiction over federal questions such as those presented[14] where the sum or value in controversy exceeds $10,000. Dismissal for failure to satisfy this jurisdictional amount is inappropriate unless it appears as a "legal certainty" that less than $10,000 is at issue. Saint Paul Mercury Indemnity Company v. Red Cab Company, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); City of Boulder v. Snyder, 396 F.2d 853, 856 (10th Cir. 1968), cert. denied, 393 U.S. 1051, 89 S.Ct. 692, 21 L.Ed.2d 693 (1969). Where equitable relief is sought, "the jurisdictional amount is to be tested by the value of the object to be gained by the complainant." Glenwood Light & Water Company v. Mutual Light, Heat & Power Company, 239 U.S. 121, 125, 36 S.Ct. 30, 32, 60 L.Ed. 174

---

11. See Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); Note, The Indian Bill of Rights and the Constitutional Status of Tribal Governments, *supra* note 1 at 1346–53; *but cf.* Colliflower v. Garland, *supra* note 9.

12. *See* United States v. Klamath and Moadoc Tribes of Indians, 304 U.S. 119, 123, 58 S.Ct. 799, 801, 82 L.Ed. 1219 (1938): "[W]hile the United States has power to control and manage the affairs of its Indian wards in good faith for their welfare, that power is subject to constitutional limitations . . . ." (citation omitted); United States v. Alcea Band of Tillamooks, 329 U.S. 40, 54, 67 S.Ct. 167, 91 L.Ed. 29 (1946); Brown v. Lane, 232 U.S. 598, 34 S.Ct. 449, 58 L.Ed. 748 (1914); C. J. Antieau, II Modern Constitutional Law § 12.136 (1969). A review of the cases suggests that the Fifth Amendment, in light of Congress' generally plenary power over Indian affairs, has been applied to federal Indian activities with some flexibility. *Cf.* Note, The Indian Bill of Rights and the Constitu-

tional Status of Tribal Governments, *supra* note 1 at 1352–53.

13. *But see*, Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2d Cir.), cert. denied, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948) (federal jurisdiction over Fifth Amendment claims may exist independently of congressional authorization). Cf., C. A. Wright, Law of Federal Courts § 10 (1970).

14. The federal question must be substantial. In Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 321 F.2d 767, 770 (10th Cir. 1963), the court dismissed the constitutional claims for insubstantiality since the suit involved only intra-tribal affairs as related to a judgment based upon undisputed interpretation of federal law. The present suit is lifted from the category of intra-tribal by this court's finding of jurisdiction over the defendants purporting to be members of the business council and election boards, as discussed in Part I of this opinion, and by the involvement of the interpretation of the Fifth Amendment.

**638**

(1915). This court cannot find as a "legal certainty" that the value of governing the Confederated Tribes of the Goshute Reservation does not have pecuniary worth, from each plaintiff's viewpoint, exceeding $10,000. Furthermore, in that narrow spectrum of civil rights suits against federal authorities which may not be judicially cognizable except under 28 U.S.C.A. § 1331, the value of the civil right itself should be considered in determining the jurisdictional amount. *See discussions in* Murphy v. Colonial Federal Savings and Loan Association, 388 F.2d 609, 614–615 (2d Cir. 1967) (quoting legislative history of section 1331); Cortright v. Resor, 325 F. Supp. 797, 808–811 (E.D.N.Y.) (citing cases and authorities), rev'd on other grounds, 447 F.2d 245 (2d Cir. 1971) (expressly reserving the questions raised under section 1331); Marquez v. Hardin, 339 F.Supp. 1364, 1370–1371 (N.D.Cal. 1969). In view of the foregoing, jurisdiction exists under 28 U.S.C.A. § 1331.

■ ■ Jurisdiction may also be present under 28 U.S.C.A. § 1361 (Supp. 1972) (mandamus) which requires no jurisdictional amount. Mandamus is an extraordinary remedy available where the "duty sought to be exercised [is] a positive command and so plainly prescribed as to be free from doubt." (Citations omitted.) Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364, 367 (10th Cir. 1966). In McQueary v. Laird, 449 F.2d 608, 611 (10th Cir. 1971), the court said that section 1361 "authorizes the court to issue mandamus only to require the exercise of permissible discretion, or to compel performance of ministerial duties." (Citations omitted.) The court added that injunctive relief—as opposed to mandamus—was unavailable under this section. In the present case it is argued that the Fifth Amendment compels defendant Bureau employees to recognize and deal with plaintiffs as rightful office holders. *See* Cortright v. Resor, *supra*, 325 F.Supp. at 812. The record is insufficient to allow this court to make a preliminary determination of the merits of this claimed duty owed to plaintiffs and allegedly made non-discretionary by the constitutional circumstances involved. However, such a duty, if established, would appear to meet the prerequisites for mandamus and, contingent upon the question of sovereign immunity, jurisdiction should not be denied at this early stage.

■ Jurisdiction is also claimed under 28 U.S.C.A. § 1343(1), which grants jurisdiction for the award of damages in conspiracy actions arising under 42 U.S.C.A. § 1985, and under 28 U.S.C.A. § 1343(4), which authorizes general relief "under any Act of Congress providing for the protection of civil rights." The Act of Congress here involved, 42 U.S.C.A. § 1985(3), prohibits conspiracies to violate civil rights.[15] The United States Supreme Court has recently given broad application to this subsection in Griffin v. Breckenridge, 403 U. S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), holding that it reaches conspiracies by private individuals. In so doing, the Court refused to limit the statute's reach to conspiracies involving "state action." It was apparently this now defunct limitation which had prevented suit of federal officers under subsection 1985(3). *E. g.*, Farkas v. Texas Instrument, Incorporated, 375 F. 2d 629, 634 (5th Cir.), cert. denied, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967). Koch v. Zuieback, 316 F.2d 1, 2 (9th Cir. 1963). The Court suggested that Congress intended "to speak in § 1985(3) of *all* deprivations of 'equal protection of the laws' and 'equal privileges and immunities under the laws,' whatever their source." Griffin v. Breckenridge, *supra* 403 U.S. at 97, 91 S.Ct. at 1796. While declining to decide whether a conspiracy motivated by "in-

---

15. Subsection 1985(3) covers only conspiracies in a state or territory. The disputed conduct of defendant Bureau employees occurred in Nevada, not on the reservation.

vidiously discriminatory intent other than racial bias would be actionable" under the statute (*id.* at 102 n. 9, 91 S.Ct. at 1798), the Court's opinion generally emphasizes the broad reach of the statute, stating, for example, that a conspiracy which aims "at a deprivation of the equal enjoyment of rights secured by the law to all," (*id.* at 102, 91 S.Ct. at 1798; footnote omitted) may be reached by the statute. On balance, plaintiffs' allegations of an overt conspiracy among one faction of Indians to deprive another of certain civil rights would appear cognizable under the statute.[16] Subsection 1985(3) does not authorize equitable relief, nor does subsection 1343(1), one of its jurisdictional counterparts. However, subsection 1343(4) does authorize such relief and the broad equitable jursdiction of federal courts supports the availability of such relief. *E. g.,* Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 and n. 4 (1946); Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 400, 91 S.Ct. 1999, 29 L.Ed. 2d 619 (concurring opinion of Justice Harlan) (1971); Mizell v. North Broward Hospital District, 427 F.2d 468, 473 (5th Cir. 1970).

■ ■ Defendant's argument that sovereign immunity defeats the court's jurisdiction is inapposite since the gravamen of the action against defendant Bureau employees is that they exercised their powers in a manner which rendered their actions and powers constitutionally void and thus without the protection of sovereign immunity. Dugan v. Rank, *supra,* 372 U.S. at 621–623, 83 S.Ct. 999; McQueary v. Laird, *supra,* 449 F.2d at 610; Rockbridge v. Lincoln, 449 F.2d 567, 572–573 (9th Cir. 1971). Since the claim is that defendants acted outside of the authority of the United States and full relief is available from the named defendants, the contention that the United States must be joined as an indispensable party is incorrect. Larson v. Domestic and Foreign Commerce Corporation, *supra,* 337 U.S. at 687–702, 69 S.Ct. 1457; 3A Moore's Federal Practice, *supra.*

## III

### *The Administrative Procedure Act*

■ Plaintiffs seek review under the Administrative Procedure Act, 5 U.S.C.A. §§ 701–706, of the actions by defendant Bureau employees who, after the election board declined to certify plaintiffs, refused to recognize and deal with plaintiffs. Plaintiffs appealed this administrative decision under 25 C. F.R. § 2, which provides for review where decisions or actions of Bureau officials are protested as a violation of constitutional law, applicable federal statutes, treaties or Bureau regulations. 25 C.F.R. § 2.2. The appeal was termed premature by the Area Director on the ground that the Bureau cannot recognize and deal with plaintiffs until and unless they have been certified in their offices by the election board, composed of three of the defendants in this suit. Plaintiffs have not sought administrative review of the Area Director's decision although further review is authorized by Bureau regulations. *E. g.,* 25 C.F.R. § 2.21.

While this court will not as a general rule assume jurisdiction over disputes in which administrative remedies have not been exhausted, the present circumstances require an exception. The Bureau clearly cannot recognize and deal with plaintiffs, which would be the relief sought upon further administrative review, without first determining that plaintiffs are the rightful members of

---

16. *But cf.* the categorical statement in Lynch v. Household Finance Corp., 405 U.S. 538, 547, 92 S.Ct. 1113, 1119, 31 L.Ed.2d 424, that, "for example, in suits against federal officials for alleged deprivations of constitutional rights, it is necessary to satisfy the amount in controversy requirement for federal jurisdiction" (citations omitted), thus perhaps implying that sections 1985 and 1343(1), (4) which require no jurisdictional amount are inapplicable to federal officials. However, the court was discussing 28 U.S.C.A. §§ 1343(3) and 1331, not subsections 1343(1), (4).

the business council. However, that is the very determination which this court must make in any event in order to resolve the dispute between plaintiffs and those defendants acting as members of the business council and election boards—a dispute over which the court has jurisdiction under the Indian Civil Rights Act. It would be unreasonable for this court to proceed, as the Indian Civil Rights Act requires, to determine the legitimacy of plaintiffs' claim to office at a trial involving plaintiffs and defendants acting as members of the business council and election boards while at the same time requiring plaintiffs in their action against the Bureau employees to seek what amounts to a similar determination by the Bureau—a determination which, in any case, could ultimately be conformed to the court's determination upon judicial review. Under these circumstances, the utility of further administrative review is undermined. Furthermore, the legitimacy of plaintiffs' claim to office turns in large measure on whether the Goshute Constitution allows write-in candidates. This is a question of law for whose determination the courts are peculiarly well suited and for whose resolution, under the present circumstances at least, it is unnecessary to await the exhaustion of administrative remedies. As a result, the court may properly assume jurisdiction of defendant Bureau employees in order to review their actions.

## IV

 The existence of jurisdiction over the present dispute is, of course, no indication of the outcome on the merits. The plenary power of Congress applied circumspectly in the Indian Civil Rights Act with a view toward enhancing Indian civil rights without undermining cultural identity and the tradition of judicial restraint in this area, grounded in part in a similar concern for tribal integrity, will compel the court to view the merits of plaintiffs' complaint in light of tribal practices and circumstances. Essential fairness in the tribal context, not procedural punctiliousness, is the standard against which the disputed actions must be measured.

## V

## ORDER

Defendants' motions to dismiss are denied.