Geraldine JANIS et al.

v.

Dick WILSON, etc., et al.

No. CIV 73-5073.

United States District Court,
D. South Dakota.

Dec. 11, 1974.

Ramon Roubideaux, Rapid City, S. D., Robert J. Doyle, Cambridge, Mass., for plaintiffs.

Dennis H. Hill, Rapid City, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

The above matter has come before this Court pursuant to defendants' motion for summary judgment. Counsel for all parties appeared before this Court on October 8, 1974, and a full hearing was held. On November 12, 1974, the plaintiffs moved to amend their complaint by joining the Oglala Sioux Tribe as party defendant and the plaintiffs' motion to amend was granted.

The plaintiffs are members of the Oglala Sioux Tribe and are former tribal government employees under the Community Health Representative Program (C.H.R.) located on the Pine Ridge Indian Reservation in South Dakota. The defendants include the Oglala Sioux Tribe and three tribal officers. The

tribe through Executive Committee action terminated the plaintiffs' employment on April 5, 1974, because plaintiffs allegedly were participating in political demonstrations during working hours on February 22 and 23, 1973. The plaintiffs allegedly drew full wages and were not granted leave time for February 22 or 23.

The plaintiffs claim that the Tribe, in terminating their employment, violated Tribal Ordinance 71–05, 25 U.S.C. § 1302(1, 8), and the free speech and due process clauses of the First and Fifth Amendments to the United States Constitution. The plaintiffs request that this Court order the defendants to reinstate their former tribal employment, to remove from their personnel files all record of their discharge, and to permanently enjoin the defendants from using such records against the plaintiffs in the future. The plaintiffs further request that this Court grant them back wages from April 5, 1974, and award $5,000.00 to each plaintiff for emotional and psychological damage, and $15,000.-00 to each plaintiff for punitive damages.

The principles which govern the disposition of defendants' motion for summary judgment are well established. The summary judgment procedure provided by Rule 56 of the Federal Rules of Civil Procedure is designed for the prompt disposition of an action where there is no genuine issue regarding any material facts, thus avoiding a useless trial to prove facts which are not actually disputed. The rule contemplates an inquiry in advance of trial as to whether there is a genuine issue and may be invoked for the purpose of striking sham claims and defenses which obstruct a prompt determination of the truth. It cannot be so applied as to deprive a litigant of his right to try any genuine issue by jury or otherwise. The proceeding on motion for summary judgment is not to be regarded as a trial, but for the determination of whether or not there is a genuine issue to be tried. Parmelee v.

Chicago Eye Shield Co., 157 F.2d 582, 584–585 (8th Cir. 1946).

A summary judgment upon motion by a defendant in an action should not be granted except where the defendant is entitled to its allowance beyond all doubt. To warrant its entry the facts conceded by the plaintiff, or demonstrated beyond a reasonable question to exist, should show the right of the defendant to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances. A summary judgment is an extreme remedy, and, under the rule, should be awarded only when the truth is quite clear, and all reasonable doubts raised as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. United States v. Farmers Mut. Ins. Ass'n of Kiron, Iowa, 288 F.2d 560, 562 (8th Cir. 1961); Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213, 216 (8th Cir. 1951); Warner v. First National Bank of Minneapolis, 236 F.2d 853, 857 (8th Cir. 1956).

Rule 56(c) of the Rules of Civil Procedure provides that a summary judgment shall be granted if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that except for the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. When affidavits are offered in support of a motion for summary judgment, they must present admissible evidence, and must not only be made on the personal knowledge of the affiant, but must show that the affiant possesses the knowledge asserted. Walling v. Fairmont Creamery Co., 139 F.2d 318, 322 (8th Cir. 1943).

Allegations in the pleadings do not create an issue as against a motion for summary judgment supported by affidavits. The very object of the summa-

ry judgment procedure, as then Judge Cardozo said, is to "separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial." Richard v. Credit Suisse, 242 N.Y. 346, 350, 152 N.E. 110, 111 (1923), Wright, Law of Federal Courts, 444 (2d Ed. 1970). Accordingly, Rule 56 of the Federal Rules of Civil Procedure states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. Fed.R.Civ.P. 56(e).

Thus it is, of course, error to deny trial when there is established a genuine dispute of facts; but it is just as much error and perhaps more, in cases of hardship, to deny or postpone judgment where the ultimate legal result is clearly indicated. Arnstein v. Porter, 154 F.2d 464, 478 (2nd Cir. 1946).

The following facts, material to the issues presented in this case, are not in dispute and are therefore deemed to be established. (1) Pursuant to a contract between the United States of America, Department of Health, Education and Welfare, and the Oglala Sioux Tribe, a Community Health Representative (C.H.R.) program was instituted on the Pine Ridge Indian Reservation. This program has been in operation and administered by the tribe since 1965 and has continuously been in operation to the present time. See plaintiffs' amended complaint, paragraph 12. (2) Plaintiff Geraldine Janis was hired on March of 1965 and at the time of her termination she held the position of supervisor-coordinator of the program. Plaintiff Della Starr was hired in March of 1965 and at the time of her termination she held the position of community repre-

sentative in the C.H.R. program. Plaintiff Victoria Wounded Foot was hired in 1970 and at the time of her termination she also was a community representative in the C.H.R. program. Plaintiff Minerva Walks Out was hired in 1972 and at the time of her termination she held the position of clerk-secretary in the C.H.R. program. See plaintiffs' amended complaint, paragraph 13. (3) All plaintiffs and all defendants are American Indians and members of the Oglala Sioux Tribe, and all reside on the Pine Ridge Indian Reservation in South Dakota. (4) During the period of time material to this case, defendant Wilson was the President of the Oglala Sioux Tribe, defendant Nelson was the Treasurer, defendant Eaglebull was the Secretary, and all three defendants were members of the tribal Executive Board of the Oglala Sioux Tribe. See plaintiffs' complaint, paragraphs 8, 9, and 10. (5) On February 22, 1973, plaintiffs participated with others in public political demonstrations in front of the Oglala Sioux Tribal office and on February 23 in front of the Bureau of Indian Affairs office. Plaintiffs admit in paragraph 16 of their amended complaint that "at several times during the months of February and March, plaintiffs and other participated in small picket lines and demonstrations." (6) On April 4, 1973, defendants Wilson, Nelson and Eaglebull, who together constitute the Executive Committee of the Oglala Sioux Tribe, met in regular session, and upon the recommendation of Mr. Witt, the O.S.T. Court Prosecutor, terminated the plaintiffs' employment by unanimous decision for the reason that "These persons, by public demonstrations, advocated the overthrow of the Tribal Government and the Executive Committee feels that these persons are not drawing salary from the C.H.R. program for such actions during regular working hours." Notice of termination was served upon plaintiffs on April 9, 1973. See defendants' exhibit item 12(5); 12(b); and plaintiffs' amended complaint, exhibit B. (7) Plaintiffs admit that they partici-

pated in such political demonstrations on February 22 and 23, 1973. Plaintiffs attempt to defend their action and thereby show that their termination of employment was wrongful by alleging that they gained prior approval from Mr. Eastman and Mr. Lyman. See plaintiffs' amended complaint, paragraphs 16 and 18.

The plaintiffs have not submitted affidavits or other proof to support these bare allegations and even if such allegations are true, they are immaterial because Mr. Eastman and Mr. Lyman are employees of the Bureau of Indian Affairs and have no authority to grant the plaintiffs, who are tribal employees, leave to participate in public political demonstrations during working hours.

Plaintiffs also attempt to defend their actions by alleging that they only participated in demonstrations at times when they were on approved annual leave and not during working time. See plaintiffs' amended complaint, paragraph 19.

Again plaintiffs did not submit affidavits or other proof at the summary judgment hearing to support these bare allegations. Defendants, on the other hand, have established that between the hours of 1:00 p. m. to 3:00 p. m. on February 22 and 23, 1973, the plaintiffs were participating in public political demonstrations. See defendants' answers to plaintiffs' interrogatories, number 39; defendants' exhibit item 4 which contains all C.H.R. approved requests for leave for January 1 through April 6, 1973, and does not include approved leave for any of the plaintiffs for February 22 or 23, 1973. See also defendants' exhibit item 3 which contains copies of the C.H.R. payroll records for the period of January 1 to April 6, 1973, and establishes for pay period # 17, February 12 through and including February 23, 1973, that the plaintiffs drew full pay for 80 hours each and no leave time of any type was approved.

It is therefore established without dispute that plaintiffs participated in public political demonstrations on February 22 and 23, 1973 between the hours of 1:00 p. m. and 3:00 p. m., while drawing full pay, during working hours and without approved leave. Fed.R.Civ.P. 56(e).

(8) The plaintiffs further attempt to show that defendants' termination of their employment was wrongful by alleging that a hearing on their appeal from the Executive Board's decision was never held. See plaintiffs' amended complaint, paragraph 27.

Plaintiffs' support for this allegation is the affidavit of plaintiffs' attorney, Mr. Doyle, dated October 4, 1974. Mr. Doyle in his affidavit states in paragraph 6 that "On May 22, 1973, I was present in the tribal office with Geraldine Janis and Minerva Walks Out at 11:00 a. m. No one from a personnel board appeared that morning. At approximately 12:00 noon several men who identified themselves as members of the Evaluation Committee appeared." And in paragraph 7 Mr. Doyle states, "The personnel board did not appear that day nor hold the hearing recited by Joseph Pourier." However in paragraph 8 Mr. Doyle states, "Geraldine Janis, Minerva Walks Out and I met with the men who described themselves as the Evaluation Committee."

Thus the affidavit fails to set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The affiant admits that he is counsel for the plaintiffs, and that he and two of the plaintiffs appeared at the tribal office on May 22, 1973, and met with several men who identified themselves as members of the Evaluation Committee.

The defendants claim that a hearing on plaintiffs' appeal was held by the Evaluation Board of the Personnel Board of the O.S.T. on May 22, 1973, and to support their claim they submitted the affidavit of Joseph Pourier who was then the chairman of the Personnel Evaluation Committee of the Oglala Sioux Tribe. Mr. Pourier states that on May 22, 1973, at 11:00 a. m. he con-

vened the Personnel Evaluation Committee with members Zephier, Rondell, Shangreaux and Weston present. He further states that shortly after the prescribed hearing time, Mr. Doyle appeared personally to represent the four plaintiffs in this case. Personally present with him were plaintiffs Janis and Walks Out and the board discussed with counsel plaintiffs' severance pay and their other claims. Mr. Pourier further states that the Personnel Evaluation Committee made their decision to uphold the Executive Board's termination of plaintiffs' employment and notice of such decision was mailed to each plaintiff on May 23, 1973. See supporting affidavit of Mr. Pourier, exhibit E.

It is apparent that some confusion exists on the part of plaintiffs' counsel as to the proper title of the administrative body that heard plaintiffs' appeal. The competent evidence in this case establishes, however, that the plaintiffs' counsel appeared at the tribal office to represent plaintiffs on their appeal on May 22, 1973, before Joseph Pourier, Chairman of the Personnel Board, and a quorum of Evaluation Committee members. It is also undisputed that the Evaluation Committee of the Personnel Board voted to uphold the Executive Committee's decision to terminate plaintiffs' government employment for participating in public political demonstrations during paid working time on February 22 and 23, 1974, and that notices were mailed to each plaintiff on May 23, 1973.

The plaintiffs offer no evidence to dispute these facts. The plaintiffs' confusion as to the proper title of the administrative body that heard their appeal does not establish a genuine issue as to a material fact that must be determined at trial. The facts material to the issues presented in this case, set out in paragraphs (1) through (8) above, are not in dispute and are therefore deemed to be established. Fed.R.Civ.P. 56(e).

The genuine issues presented by plaintiffs' claims in this case are questions of law and do not involve issues of material fact. The issues are: (1) whether the defendants, in terminating plaintiffs' tribal government employment for participation in public political demonstrations during working hours for which they were paid and while not on approved leave, violated plaintiffs' right to free speech and assembly as guaranteed by the Indian Civil Rights Act, 25 U.S. C. § 1302(1), and the First Amendment to the United States Constitution; and (2) whether defendants' termination of plaintiffs' tribal government employment, notice of termination, and subsequent hearing on appeal denied plaintiffs their right of due process and equal protection of the law as guaranteed by the Indian Civil Rights Act, 25 U.S.C. § 1302(8), and by the Fifth Amendment to the United States Constitution.

The plaintiffs' claims under the First and Fifth Amendments raise the threshold question of whether the protections embodied in the Constitution limit the exercise of tribal governmental power. This issue was decided many years ago in the case of Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896). In dealing with the plaintiffs' Fifth Amendment claim, the *Talton* Court held that the Cherokee tribe had existed as a self-governing unit, with the right to punish offenses, prior to the Constitution, that federal treaties and statutes merely recognized the continuation of these rights, and therefore the tribe in punishing offenders was not exercising powers derived from the federal government. The Court decided that since the Fifth Amendment was applicable only to federal governmental actions, tribal action was not restricted by it. In Native American Church of North America v. Navajo Tribal Council, 272 F.2d 131 (10th Cir. 1959), the court cited *Talton*, and held that the First Amendment does not apply to Indian tribal governments. The Court reasoned that the First Amendment applies to and limits the power of Congress, and through the Fourteenth Amendment applies to and limits the power of the states, but since

an Indian tribe is not a state the limitation does not apply. Cohen's Handbook of Federal Indian Law (1942) at page 124, states that restraints upon Congress or upon the federal courts or upon the states, by the Constitution, do not apply to Indian tribal laws and courts. Cohen also states at page 181 that, "The provisions of the Federal Constitution protecting personal liberty or property rights, do not apply to tribal action." In Iron Crow v. Oglala Sioux Tribe of the Pine Ridge Reservation, 231 F.2d 89 (8th Cir. 1956), the Eighth Circuit held that the Fifth Amendment does not apply to the Oglala Sioux Tribe because the tribe possesses inherent sovereignty except where it has been specifically taken from them, either by treaty or by congressional act. Similarly in Barta v. Oglala Sioux Tribe of the Pine Ridge Reservation, 259 F.2d 553 (8th Cir. 1958), the Eighth Circuit held that the Fifth Amendment could not be invoked against legislative action of the Oglala Sioux Tribe, and that since Indian tribes are not states the Fourteenth Amendment has no application to them.

 In accordance with the above authority, this Court is of the opinion that the Constitution is binding upon Indian tribes only where it expressly binds them, or is made binding by treaty or by an act of Congress. The plaintiffs' claims under the First and Fifth Amendments are therefore dismissed for lack of jurisdiction.

 The plaintiffs' remaining claims are made under the Indian Civil Rights Act, 25 U.S.C. § 1302(1) and (8). In utilizing the authority it possesses to modify the manner in which Indian tribes may exercise their powers of self government, Congress enacted 25 U.S.C. §§ 1301–1303 and thereby placed upon Indian tribes new responsibilities and important limitations with respect to the manner in which tribes could exercise their governmental power. In language from the Constitution, 25 U.S.C. § 1302 incorporates amendments one, and four through eight, of the Bill of Rights with certain variations designed

to tailor these important personal freedoms to the unique circumstances of tribal government. Although Congress used language in 25 U.S.C. § 1302 from the Bill of Rights, this Court is of the opinion that the meaning and application of 25 U.S.C. § 1302 to Indian tribes must necessarily be somewhat different than the established Anglo-American legal meaning and application of the Bill of Rights on federal and state governments. Congress has recognized as legitimate and has strongly supported the policy of allowing Indian tribes to maintain their unique governmental and cultural identity. The legislative record underlying the Indian Bill of Rights clearly shows that while Congress intended to establish important individual rights for persons under the jurisdiction of tribal governments, Congress also intended that these rights be harmonized with legitimate tribal interests. By not including certain clauses of the Bill of Rights and by modifying the clauses that were finally incorporated into 25 U.S.C. § 1302, Congress recognized as legitimate the tribal interest in maintaining traditional practices that conflict with constitutional concepts of personal freedom developed in a different social context. The legislative history of 25 U.S.C. § 1302 indicates that the scope of the individual rights contained therein is to be determined by balancing them against the legitimate interests of the tribe in maintaining the traditional values of their unique governmental and cultural identity. The Indian Bill of Rights and the Constitutional Status of Tribal Governments, 82 Harv.L.Rev. 1343, 1360 (1969); McCurdy v. Steele, 353 F.Supp. 629 (D.C.Utah 1973).

 Therefore the plaintiffs' remaining claims under 25 U.S.C. § 1302(1) and (8), under the facts of this case, must not be measured by the same standards imposed by the Bill of Rights on state and federal governments, but rather these limitations must be applied with recognition of the Oglala Sioux Tribe's unique cultural heritage, their experience in self government, and the

disadvantages or burdens, if any, under which the defendant tribal government was attempting to carry out its duties.

The plaintiffs' first claim raises the legal issue of whether the defendants, in terminating plaintiffs' tribal government employment for participation in public political demonstrations during working hours for which they were paid, and while not on approved leave, violated plaintiffs' right to free speech and assembly as guaranteed by 25 U.S.C. § 1302(1) of the Indian Civil Rights Act. 25 U.S.C. § 1302(1) provides:

> No Indian tribe in exercising powers of self-government shall—
>
> (1) make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances.

The defendant tribe through its officers on May 12, 1972, enacted the Merit System of the Oglala Sioux Tribe, Ordinance Number 71–05, under which the Oglala Personnel Director administers tribal programs including C.H.R., and manages tribal employees including the four plaintiffs in this case. Ordinance 71–05 in Article XXII sets forth acts prohibited by tribal government employees. Article XXII, Section 1 entitled "Politics" sets forth the following prohibitions in paragraph 3:

> No person shall in any way solicit or in any manner, be concerned with soliciting any assessment, subscription, or contribution to the campaign funds of any political party or any candidate for public office, or take part in the management, affairs, or political campaign of any political party further than in the exercise of his rights as a citizen to express his opinion and to cast his vote.

Article XXII, Section 3, states as grounds for termination of employment in paragraph 1:

The following principles are to be abided by and complied with by all persons occupying positions in the Tribe or Commission . . . and will serve as sufficient grounds for termination.

(a) Partisan Political involvement or activity.

Acting pursuant to the above provisions of Ordinance 71–05, the Oglala Sioux Tribe terminated the tribal government employment of the four plaintiffs in this case. The plaintiffs admit in paragraphs 16, 20 and 21 of their amended complaint that they did actively participate in public political demonstrations, and that such demonstrations were partisan in nature. The defendants have established that the plaintiffs participated in these political activities during working hours for which the plaintiffs drew full pay, and on dates for which no leave of any type had been approved. Therefore if the applicable provisions of Ordinance 71–05 do not exceed the constitutional limitations placed upon the tribe by 25 U.S.C. § 1302(1), the plaintiffs' claim must be dismissed.

Although this Court has not been cited to any case authority, nor has it found any decision involving 25 U.S.C. § 1302(1) as applied to an Indian tribe on facts similar to those presented here, guidance can properly be drawn from decisions that have applied the First Amendment to the federal government.

██ Through § 9(a) of the Hatch Act, now codified in 5 U.S.C. § 7324(a)(2), federal government employees are prohibited by Congress from taking "an active part in political management or in political campaigns." Section 9(a) further provides in paragraph 26 entitled "Parades":

> An employee may not march in a political parade, organize, or be an officer or leader of such a parade. Section 9A of Hatch Act of August 2, 1939, (Public, No. 252, 76th Cong.), included as Appendix to the Opinion of the Court, United States Civil Service

**1152**

Commission v. National Association of Letter Carriers, 413 U.S. 548, 586, 93 S.Ct. 2880, 2901, 37 L.Ed.2d 796, 821 (1973).

In United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), and more recently in United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), the United States Supreme Court recognized as legitimate congressional concern the danger to the Civil Service that political rather than official effort may earn advancement, and danger to the public that governmental favor may be channeled through political connections, and held that neither the First Amendment nor any other provision of the Constitution invalidates 5 U.S.C. § 7324 which prohibits partisan political activity by federal employees. Neither the right to associate nor the right to participate in political activities is absolute under the First Amendment. Dunn v. Blumstein, 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Bullock v. Carter, 405 U.S. 134, 140–141, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

In accordance with the above authority, this Court is of the opinion that the First Amendment imposes no greater restraint on Indian tribes through 25 U.S.C. § 1302(1) than it imposes on the federal government. This Court therefore holds that Oglala Sioux Tribal Ordinance 71–05 does not violate 25 U.S.C. § 1302(1).

The plaintiffs' second claim raises the legal issue of whether the defendants' termination of plaintiffs' tribal government employment, notice of termination, and subsequent hearing on appeal, denied plaintiffs their right of due process and equal protection of the law as guaranteed by the Indian Civil Rights Act, 25 U.S.C. § 1302(8). The facts material to this issue are established: the Executive Committee of the Oglala Sioux Tribe met in regular session on April 4, 1973, and terminated plaintiffs' employment. Written notice which set forth the reasons for termination was sent by the defendants and received by plaintiffs on April 9, 1973. The written notice also informed plaintiffs of their right to appeal their termination to the Personnel Evaluation Committee. On April 18, 1973, all four plaintiffs requested a hearing on appeal. On May 15, 1973, the Personnel Director sent written notice to the four plaintiffs stating that a hearing date had been set for May 22, 1973. The Personnel Director requested that plaintiffs notify the Personnel Office in writing if they would be unable to attend. Shortly after 11:00 a. m. the Personnel Evaluation Committee met in the tribal office. Mr. Doyle an attorney at law, appeared to represent the four plaintiffs. Personally present with him were plaintiffs Janis and Walks Out and the board discussed with plaintiffs' counsel employment termination, severance pay, and other matters. No written request for continuance was received by the Personnel Board prior to the May 22, 1973, hearing on appeal. Several hours after the hearing the Personnel Board received a written request for continuance from plaintiff Wounded Foot, and on May 29, 1973, a written request for continuance was received from plaintiff Starr. The board found that the two requests were not timely filed and therefore not in good faith and it denied the requests for continuance. On May 23, 1973, the Personnel Evaluation Committee issued their decision to uphold termination of the plaintiffs' employment.

The plaintiffs contend that the manner in which their employment was terminated violated 25 U.S.C. § 1302(8) in that Tribal Ordinance 71–05 was not followed. 25 U.S.C. § 1302(8) provides:

No Indian tribe in exercising powers of self-government shall—

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.

This Court has studied Ordinance 71–05 carefully, and has not found any provision, nor has it been cited to any provi-

sion of Ordinance 71–05, violated by defendants' conduct in terminating plaintiffs' employment. Article XII, section 2, entitled "Dismissals", provides that "the appointing authority, 15 days after notice in writing to an employee stating specific reasons, may dismiss any employee . . . " and "the employee may have recourse to appeal to the Commission as provided in Article XIII." This section, however, does not appear to apply specifically to terminations for partisan political activity, and neither does Article XIII which applies only to appeals from rejection of applications for employment. Article XII entitled "Prohibitions", however, does apply specifically to partisan political activity, and section 1 of Article XXII entitled "Politics", provides for immediate termination without the requirement of written notice 15 days prior to termination. Section 3 of Article XXII entitled "Termination", provides for an employee's termination upon participation in partisan political involvement or activity. The framers of Ordinance 71–05 apparently did not include a specific appeal provision for employees terminated for partisan political activities.

In this case the Executive Board did not give the plaintiffs written notice 15 days prior to termination as provided in Article XII. The Executive Board, however, did give plaintiffs written notice, stating specific reasons for the termination, and providing them a right to appeal to the Personnel Evaluation Committee. This procedure appears to comply with Article XXII. Although Ordinance 71–05 is not a model of clarity or organization, and this Court suggests that the Oglala Sioux Tribe revise this legislation to more clearly set forth the rights and obligations of both the tribe and its employees, there is no evidence before this Court of a violation of Ordinance 71–05 that would amount to a violation of 25 U.S.C. § 1302(8).

The plaintiffs also claim that the defendants violated their procedural due process rights under 25 U.S.C. § 1302(8) by not affording them a pre-termination hearing. The plaintiffs contend that, absent a full adversary hearing before removal, they could not consistently with due process requirements be divested of their property interests or expectancy in employment, or be deprived of their "liberty" to refute the charges on which their termination was based.

This Court again, in the apparent absence of case authority applying 25 U.S. C. § 1302(8) to facts similar to those presented in the instant case, draws guidance from decisions that have defined the substantive due process rights of federal employees.

Recently, in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the United States Supreme Court upheld the Lloyd-LaFollette Act, 5 U.S.C. § 7501, as constitutional. Plaintiff Arnett, a nonprobationary employee in the Civil Service, was dismissed from his position in O.E.O. for allegedly having made recklessly false and defamatory statements about other O.E.O. employees. Arnett claimed that he was denied due process because the government failed to provide a trial-type preremoval hearing before an impartial official. Section 7501 provides for removal of nonprobationary federal employees "only for such cause as will promote the efficiency of the service," and prescribes that the employer will provide the employee with written notice of the removal action and a copy of the charges, give him reasonable time for a written answer and supporting affidavits, and promptly furnish him the agency's decision. The Act further provides, however, that "[e]xamination of witnesses, trial, or hearing is not required but may be provided in the discretion of the" removing official. 94 S.Ct. at 1638.

Arnett relied for support, as do the plaintiffs in this case, on the authority of cases such as Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), and Sniadach v. Family Finance Corp., 395 U.S.

337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The *Arnett* Court explained why these cases are inapplicable. *Goldberg* held that welfare recipients are entitled under the Due Process Clause of the Fifth and Fourteenth Amendments to an adversary hearing before their benefits are terminated. *Fuentes* held that a hearing was generally required before one could have his property seized under a writ of replevin. In *Bell* the Court held that due process required a procedure for determining whether there was a reasonable possibility of a judgment against a driver as a result of an accident before his license and vehicle registration could be suspended for failure to post security under Georgia's uninsured motorist statute. And in *Sniadach,* a Wisconsin statute providing for prejudgment garnishment without notice to the debtor or prior hearing was struck down as violative of the principles of due process. The *Arnett* Court explained:

> These cases deal with areas of the law dissimilar to one another and dissimilar to the area of govermmental employer-employee relationships with which we deal here. The types of liberty and property protected by the Due Process Clause vary widely, and what may be required under that clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests. 416 U.S. 134, 155, 94 S.Ct. 1633, 1645, 40 L.Ed.2d 15 (1974).

Citing Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961), the *Arnett* Court stated:

> The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. 416 U.S. 134, 155, 94 S.Ct. 1633, 1645, 40 L.Ed.2d 15 (1974).

The *Arnett* Court held that the property interest which plaintiff had in his employment was itself conditioned by procedural limitations which had accompanied the grant of that interest. The Court upheld as constitutional 5 U.S.C. § 7501 which provided for an employee's termination for cause without preremoval hearing and depending on the charge, even without postremoval hearing on appeal. The Court reasoned that:

> Congress was obviously intent on according a measure of statutory job security to governmental employees which they had not previously enjoyed, but was likewise intent on excluding more elaborate procedural requirements which it felt would make the operation of the new scheme unnecessarily burdensome in practice. 416 U.S. 134, 152, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15 (1974).

Similar to plaintiffs' claim in the case at bar, *Arnett* contended that because of the nature of the charges on which his dismissal was based, he was in effect accused of dishonesty, and therefore a hearing was required before he could be deprived of this element of his "liberty" protected against deprivation without due process. In Board of Regents v. Roth, 408 U.S. 564 at 573, 92 S.Ct. 2701 at 2707, 33 L.Ed.2d 548, the Court said:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality . . . In such a case, due process would accord an opportunity to refute the charge before university officials.

The *Arnett* Court explained:

> But liberty is not offended by dismissal from employment itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee. Since the purpose of the hearing in such case is to provide the person 'an opportunity to clear his name,'

a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause. 416 U.S. 134, 157, 94 S.Ct. 1633, 1646, 40 L.Ed.2d 15 (1974).

Although the provisions of the Fifth and Fourteenth Amendments do not bind tribal governments, and the usual meaning of equal protection and due process may be modified in light of federal concern for tribal cultural and governmental autonomy, especially where imposition would threaten basic tribal interests, McCurdy v. Steele, 353 F. Supp. 629 (D.C.Utah 1973), this Court is of the opinion that the case authority applying the Constitution to the federal government is helpful in determining the limitations imposed by 25 U.S.C. § 1302 on Indian tribes.

▆▆▆ In accordance with the above authority, this Court holds that the plaintiffs were not denied rights granted under 25 U.S.C. § 1302(8). The procedure adopted and followed by defendants is reasonable and fundamentally fair. To paraphrase *Arnett*, the Oglala Sioux Tribe enacted Ordinance 71–05 to accord tribal employees a measure of job security which they had not previously enjoyed, but the tribe obviously intended to exclude more elaborate procedural requirements which it felt would make the operation of the new scheme unnecessarily burdensome in practice.

This Court is of the opinion that the plaintiffs in this case were afforded notice and opportunity to be heard. This Court therefore holds that the written notice sent by the defendants at time of termination, and the hearing on appeal, afforded the plaintiffs "an opportunity to clear their name," and that such administrative procedures sufficiently comply with the requirements of the Equal Protection and Due Process clauses as applied to the Oglala Sioux Tribe through 25 U.S.C. § 1302(8). The defendants' motion for summary judgment is granted and the plaintiffs' claims are hereby dismissed.