*THE NAVAJO NATION*
Plaintiff-Appellee
*vs.*
*Rafael RODRIGUEZ*
Defendant-Appellant

In the Supreme Court of the Navajo Nation

No. SC-CR-03-04

December 16, 2004

Loretta Nez, Esq., Tuba City, Navajo Nation, for Appellant; Ella Wilson, Esq., Window Rock, Navajo Nation, for Appellee.

Before FERGUSON, Acting Chief Justice, and HOLGATE, Associate Justice (by designation).

This case concerns the admissibility of a confession in a criminal case. Based on our review, we vacated the conviction and released Appellant in a previous order. Our reasons are set out below.

I

The relevant facts are undisputed. The Navajo Nation police arrested Appellant Rafael Rodriguez ("Rodriguez") following a shooting at a trailer park in Kayenta. While in custody, Investigator Kirk Snyder ("Investigator Snyder") of the Kayenta Police District interviewed Rodriguez. Investigator Snyder began the interview by stating to Rodriguez that his alleged actions could put in him in federal prison for up to sixty years and could result in a fine of a million and a half dollars. Investigator Snyder then produced an "advice of rights" form, a document laying out several purported rights, apparently based on the United States Supreme Court's ruling in *Miranda v. Arizona*, 384 U.S. 436 (1966). The form was in English, and there is no evidence that Investigator Snyder explained each of those rights in English or Navajo.[1] Rodriguez signed a waiver on the bottom of the form, and then proceeded to write out a lengthy confession (Confession) implicating himself as the shooter.

The Navajo Nation filed a criminal complaint against Rodriguez in the Kayenta District Court seeking a conviction for the offense of Aggravated Assault. The Navajo Nation submitted the advice of rights form and the Confession during the testimony of Investigator Snyder. After hearing objections from Rodriguez, the court admitted both into evidence. After hearing the witnesses and reviewing the evidence the Kayenta District Court found

[1] There is no evidence that Rodriguez speaks Navajo, but he apparently speaks fluent English.

Rodriguez guilty, and sentenced him to one year in jail. Rodriguez then filed this appeal.

We initially remanded the case to Kayenta District Court in light of our opinion in *Navajo Nation v. Badonie*, 8 Nav. R. 507 (Nav. Sup. Ct. 2004), for the court to include findings of fact and conclusions of law. After the court did that, Rodriguez re-filed his appeal, and both sides submitted briefs.

This Court heard oral argument on October 22, 2004. We issued an order of release on October 26, 2004 vacating the conviction and requiring the Department of Corrections to immediately release Rodriguez. We stated that an opinion giving reasons would follow. We now issue that opinion.

## II

The issues in this case are (1) whether a criminal defendant must be present at an appellate hearing, (2) whether a coerced confession may be used in a criminal proceeding to establish the truth of the allegations in the criminal complaint; and (3) whether the provision of an English language form informing a person in custody of his or her rights, and a signed waiver by that person on the form, without more, is sufficient for a confession to be voluntary.

## III

As a threshold matter, we dispose of an argument made by Rodriguez's counsel concerning his absence from the oral argument. She argued that the Navajo Rules of Criminal Procedure required the Navajo Nation to bring him to the appellate hearing. The Navajo Nation conceded this point, and claimed that he was "in route" from the Tuba City Detention Center. Despite this claim, Rodriguez never appeared. Though his counsel did not cite a rule, she presumably was referring to Rule 16 which requires that "the defendant shall be present at the arraignment and at every stage of the trial, including the impaneling of the jury and return of the verdict, and at the imposition of sentence." Nav. R. Cr. P. 16(a).

This rule does not require the presence of the defendant at the appellate oral argument. The key word in this rule is "trial." The rule clearly requires the defendant's presence only at the lower court trial through the sentencing phase. The rule does not mention the appellate process. Further, the Rules of Criminal Procedure do not apply to appeals, which are covered by the Rules of Appellate Procedure. The appellate rules contain no requirement that the defendant be present. Therefore, there was no requirement that Rodriguez attend, and no prejudice to his case because he was not there. His counsel was there, and represented his interests at the hearing. Though the defendant's attendance is not required, we encourage the parties to agree that he or she may attend, so that he or she may observe and provide guidance to his or her counsel. We now turn to the main issue in this case: the admissibility of Rodriguez's statement to the police.

## IV

Rodriguez argues that the District Court wrongly allowed the Confession into evidence for the truth of the allegations in the criminal complaint.[2] He contends that Investigator Snyder coerced the statement through threats and other pressure. He also contends that, even if there was no coercion, the "advice of rights form" itself is insufficient, as applied to him, as a waiver of his right not to give a statement to the police. At oral argument the Navajo Nation conceded that there was a "degree of coercion" by Investigator Snyder, but that the confession was nonetheless valid because Rodriguez signed the advice of rights form, thereby waiving his right not to make the statement.

The Court makes a preliminary observation concerning the oral argument. Neither side was prepared to discuss the confession admissibility issue. Rodriguez's brief contains no citation to any statute, case law, or Navajo common law or principle concerning confessions, and his counsel did not submit any at the oral argument. When asked about the Indian Civil Rights Act, the Navajo Bill of Rights, and the possible application of *Miranda v. Arizona*, 384 U.S.436 (1966), his counsel admitted having no knowledge of any of these sources of law. The Navajo Nation, though showing knowledge of these laws, admitted having no knowledge of the actual facts in this case to apply them, asserting that she was not the attorney who presented the case to the lower court. Ordinarily, we rely on the parties, especially the appellant, to argue their points and provide us with guidance on the relevant law and its application to the record in the case. We would be severely limited in our discussion if we were to rely on the parties in this case. Because the issues are of such importance to the Navajo Nation, we cannot limit ourselves to the arguments made by the parties.

### A

Section 8 of our Navajo Bill of Rights protects criminal defendants from being "compelled ... to be a witness against themselves." 1 N.N.C. § 8. This provision is almost identical in language to the equivalent section of the Indian Civil Rights Act, 25 U.S.C. § 1302(4) (Indian tribe cannot "compel any person in a criminal case to be a witness against himself"), and the Fifth Amendment to the United States Constitution (no person can be "compelled in any criminal case to be a witness against himself"). In *Navajo Nation v. McDonald*, we recognized that the right against self-incrimination under our Bill of Rights is fundamental. 7 Nav. R 1, 13 (Nav. Sup. Ct. 1992). A person cannot give information for his or her own punishment unless there is a "knowing and voluntary decision to do so." *Id.* We interpreted the English words in our Bill of Rights in light of the Navajo principle rejecting coercion. *Id.* We said that "others may 'talk' about a Navajo, but that does not mean coercion can be used to make that person admit guilt or the facts leading to a conclusion of guilt." *Id.*

2 This case does not concern other uses of a confession, such as for impeachment purposes, but only the situation where a confession is submitted as evidence supporting the truth of the allegation in the criminal complaint.

We reiterate these principles today. Our Navajo Bill of Rights, as informed by the Navajo value of individual freedom, prohibits coerced confessions. We expand upon *McDonald* by applying these principles to a person in police custody. The police department is an arm of the Navajo government, and as such must recognize a person's rights in much the same ways, and to the same extent, as must our courts. Therefore, in this case, the right against coerced self-incrimination attached not when Rodriguez first appeared before the district court, but when he was placed in police custody and was interviewed by Investigator Snyder.

Based on the Navajo Nation's concession that the police coerced Rodriguez, we have no choice but to conclude that coercion occurred. The Navajo Nation did not dispute that the investigator threatened Rodriguez by indicating to him the possibility of sixty years of federal jail time and a fine of one and a half million dollars before Rodriguez reviewed and signed the advice of rights form. Though the Navajo Nation referred to a "degree of coercion" without defining "degree," we do not see how coercion can be measured by degrees. Either the police coerced Rodriguez or it did not. The parties agree that Rodriguez was coerced, and we find that any degree of coercion is in violation of the Navajo Bill of Rights.

B

The coercion itself may be enough to vacate Rodriguez's conviction, however we also consider the Navajo Nation's argument that his waiver on the advice of rights form was enough for his confession to be admissible. As discussed above, the right against self-incrimination in the Navajo Nation includes the requirement that a confession be "knowing." *McDonald*, 7 Nav. R, at 13. Even if no coercion occurred, we must decide what rights Rodriguez had when he signed the waiver. The main question is whether the protections recognized in the United States Supreme Court's decision in *Miranda* apply on the Navajo Nation, or whether this Court should apply some other approach.

In giving meaning to the right against self-incrimination, this Court does not have to directly apply federal interpretations of the Bill of Rights. In interpreting the Navajo Bill of Rights and the Indian Civil Rights Act, as with other statutes that contain ambiguous language, we first and foremost make sure that such interpretation is consistent with the Fundamental Laws of the *Diné*. Navajo Nation Council Resolution No. CN-69-02 (November 1, 2002). That the Navajo Nation Council explicitly adopts language from outside sources, or that a statute contains similar language, does not, without more, mean the Council intended us to ignore fundamental *Diné* principles in giving meaning to such provisions. *Cf. Fort Defiance Housing Corp. v. Lowe*, 8 Nav. R. 463, 474–75 (Nav. Sup. Ct. 2004) (statute adopted from outside source is not illegitimate, but must be carefully interpreted consistent with Navajo values). Indeed, Navajo understanding of the English words adopted in statutes may differ from the accepted Anglo understanding. Further, the Indian Civil Rights Act does not require our application of federal interpretations, but only mandates the

application of similar language. Federal courts have declined to blindly apply federal interpretations of an equivalent constitutional provision in certain circumstances when tribal cultural values dictate a different outcome. *See, e.g., Randall v. Yakima Nation Tribal Court,* 841 F. 2d 897, 899-900 (9th Cir. 1988) (quoting with approval Handbook of Indian Law statement that interpretation "is not an easy process because [ICRA] concepts are not readily separated from their attendant cultural baggage"); *Janis v. Wilson,* 385 F. Supp. 1143, 1150-51 (D.S.D. 1976) (interpreting equal protection provision in ICRA "with recognition of the Oglala's Sioux Tribe's unique cultural heritage, their experience in self government, and the disadvantages or burdens, if any, under which the defendant tribal government was attempting to carry out its duties").

While we are not required to apply federal interpretations, we nonetheless consider them in our analysis. We consider all ways of thinking and possible approaches to a problem, including federal law approaches, and we weigh their underlying values and effects to decide what is best for our people. We have applied federal interpretations, but have augmented them with Navajo values, often providing broader rights than that provided in the equivalent federal provision. *See, e.g., Duncan v. Shiprock District Court,* 8 Nav. R. 581, 591 n. 5 (Nav. Sup. Ct. 2004) (applying federal definition of "equitable proceeding" but declining to apply Seventh Amendment historical test on right to jury trial); *Lowe,* 8 Nav. R. at 463, 474 (recognizing that Navajo Due Process protects a greater scope of "property" than federal due process). Our consideration of outside interpretations is especially important for issues involving our modern Navajo government, which includes institutions such as police, jails, and courts that track state and federal government structures not present in traditional Navajo society. *See e.g., Mitchell v. Davis,* 8 Nav. R. 542, 446 (Nav. Sup. Ct. 2004) (using federal interpretations of civil procedure rules as part of analysis for interpreting Navajo court rules adapted from federal rules).

We hereby interpret the right against self-incrimination to require, at a minimum, clear notice by the police in a custodial situation that the person in custody (1) has the right to remain silent and may request the presence of legal counsel during questioning, (2) that any statements can be used against him or her, (3) the right to an attorney, and (4) the right to have an attorney appointed if he or she cannot afford an attorney. These are the rights already recognized by the Kayenta Police District in their advice of rights form, and we conclude here that they apply across the Navajo Nation. Essentially, we adopt the minimum requirements from Miranda as consistent with our Navajo values. We have previously suggested, without explicitly holding, that this is appropriate. *See In re A.W.,* 6 Nav. R. 38 (Nav. Sup. Ct. 1989)(referring to "Miranda rights" required to be given in Navajo Children's Code); *Navajo Nation v. McCabe,* 1 Nav. R. 63, 64-65 (Ct. App. 1971)(indicating *Miranda* rights not necessary without explicitly adopting standard).

However, we add the following. The mere giving of a standardized "advice of rights" form to a person in custody is not enough. The relationship between the Navajo Nation government and its individual citizens requires the same level of respect as the relationship between one person to another. In our Navajo way of thinking we must communicate clearly and concisely to each other so that we may understand the meaning of our words and the effect of our actions based on those words. The responsibility of the government is even stronger when a fundamental right, such as the right against self-incrimination, is involved.

In *Miranda*, the U.S. Supreme Court recounted the source of the constitutional protection against self-incrimination. *Miranda*, at 442-443 (quoting *Brown v. Walker*, 161 U.S. 591 (1896)). Reminiscing about the English criminal procedure, the Court stated that

> if an accused person be asked to explain his apparent connection with a crime under investigation, the case with which the questions put to him may assume an inquisitorial character, the temptation to press the witness unduly, to browbeat him if he be timid or reluctant, to push him into a comer, and to entrap him into fatal contradictions ... made the system so odious as to give rise to a demand for its total abolition.

*Id.* With such inequities impressed upon the minds of American colonists, "a denial of the right to question an accused person ... became clothed in this country with the impregnability of a constitutional enactment." *Id.*

We are not guided in our own criminal jurisprudence by a legacy of internal oppression. Nevertheless, the U.S. Supreme Court's discussion reminds us of our Navajo principle of *hazhó'ógo*. *Hazhó'ógo* is not a man-made law, but rather a fundamental tenet informing us how we must approach each other as individuals. When discussions become heated, whether in a family setting, in a community meeting or between any people, it's not uncommon for an elderly person to stand and say "*hazhó'ógo, hazhó'ógo sha 'álchíní*."[3] The intent is to remind those involved that they are *Nohookáá' Dine'é*,[4] dealing with another *Nohookáá' Dine'é*, and that therefore patience and respect are due. When faced with important matters, it is inappropriate to rush to conclusion or to push a decision without explanation and consideration to those involved. *Áádóó na'níle' dii éí dooda*.[5] This is *hazhó'ógo*, and we see that this is an underlying principle in everyday dealings with relatives and other individuals, as well as an underlying principle in our governmental institutions. Modern court procedures and our other adopted ways are all intended to be conducted with *hazhó'ógo* in mind.

Considering the means by which Rodriguez's confession was obtained and the use of the advice of rights form, we now stand and say "*hazhó'ógo*." The transaction between Rodriguez and Investigator Snyder, and the way that

3 "hazhó'ógo, hazhó'ógo my children"
4 Earth-surface-people (human beings).
5 Delicate matters and things of importance must not be approached recklessly, carelessly, or with indifference to consequences.

the advice of rights form was presented to Rodriguez does not conform with the ways that people should interact. We must never forget that the accused is still *Nohookáá' Dine'é*, and that he or she is entitled to truthful explanation and respectful relations regardless of the nature of the crime that is alleged. Likewise, a police badge cannot eliminate an officer's duty to act toward others in compliance with the principles of *hazhó'ógo*.

We therefore hold that the police, and other law enforcement entities and agencies, must provide a form for the person in custody to show their voluntary waiver. They must also explain the rights on the form sufficiently for the person in custody to understand them. Merely providing a written English language form is not enough.[6] The sufficiency of the explanation in a Navajo setting means, at a minimum that the rights be explained in Navajo if the police officer or other interviewer has reason to know the person speaks or understands Navajo. If the person does not speak or understand Navajo, the rights should be explained in English so that the person has a minimum understanding of the impact of any waiver. Only then will a signature on a waiver form allow admission of any subsequent statement into evidence.

In this case, there is insufficient evidence that the Navajo Nation police explained each of the rights on the form to Rodriguez. Consequently, even if there was no preceding coercion, there was not a "voluntary" waiver of his rights.

## V

The remaining question is the effect of the improper admission of the confession on the conviction. We questioned both sides at oral argument whether, despite the inadmissibility of the confession, there still was sufficient evidence to maintain the conviction. In reviewing the order of the District Court, we conclude that the confession was a significant part of the evidence used by the court to reach its ruling. To parse out the confession from the rest of the evidence at this level and speculate on what the District Court would have done if the confession was never admitted at trial would be improper. Given the importance of the fundamental right of the defendant against self- incrimination, and the difficulty, if not impossibility of retroactively reviewing a case as if that evidence never entered into the court's decision, the vacating of the conviction and release of the defendant was proper.

We did not come to this decision lightly. The crime which Rodriguez was accused of committing is a serious one. However, the seriousness of the crime does not excuse the conceded violation of the defendant's rights. Therefore, though we had significant reservations, we decided the only proper remedy was to vacate the conviction and release the defendant.

6 We note that the form used here contains several typographical, spelling and grammatical errors that may affect the clarity of explanation we require today.

## VI

Based on the above, we vacated the conviction and released Rodriguez.