**Molley McCURDY et al., Appellees,**

v.

**Hubert STEELE et al., Appellants.**

**No. 73–1794.**

United States Court of Appeals, Tenth Circuit.

Argued July 9, 1974.

Decided Oct. 18, 1974.

Rehearing Denied Jan. 10, 1975.

Thomas E. Luebben, Jr., Native American Legal Defense & Ed. Fund, Inc., Albuquerque, N. M., for appellees.

Before SETH and HOLLOWAY, Circuit Judges, and TALBOT SMITH, Senior District Judge *.

SETH, Circuit Judge.

This action was commenced by the appellees who are members of an Indian Tribe and whose names appeared on the ballot at the tribal election of members of the Business Council for the Tribe. The suit challenges the validity of the votes cast for the write-in candidates at the election asserting a violation of their rights under the tribal constitution and under the equal protection and due process clauses of the Indian Civil Rights Act [25 U.S.C. § 1302(8)]. An earlier reported opinion from the district court, in which appellants' motion to dismiss was denied, appears sub nom. McCurdy v. Steele, 353 F.Supp. 629 (D.Utah). Thereafter the case proceeded to final judgment on the merits, and the appellees were granted injunctive relief in the manner requested, which relief included certification of their election to the Business Council, and an injunction restraining appellants, Hubert Steele, Jim Steele, and Henry Pete (who were the write-in candidates)', and Leo Pete, from purporting to act on behalf of the Confederated Tribes as its Business Council. The order of the district court has been stayed pending this appeal.

The Confederated Tribes of the Goshute Reservation organized themselves in

---

* TALBOT SMITH, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1940 under the provisions of the Indian Reorganization Act [25 U.S.C. § 476], and adopted a Constitution and Bylaws. Under its Constitution the principal tribal governing body is the Business Council consisting of five members elected to three-year terms. Article V, Section 5 of the Goshute Constitution provides that any qualified voter may become a candidate for the Business Council, and that "[h]e shall file notice of his candidacy with the Secretary of the Business Council at least fifteen days prior to the election." The dispute as to whether write-in candidates are permitted centers upon this provision.

In early 1972 the members of the Business Council then in office were recalled, and an election of a new Council was scheduled for April 29, 1972. Members of the recalled Council included the appellants, Hubert Steele, Jim Steele, Henry Pete, and Leo Pete. A three-member Election Board consisting of Hubert Steele, Jim Steele, and Henry Pete was appointed by the outgoing Council.

The appellees (Molley McCurdy, Buster McCurdy, Earl Baker, Willie Murphy, and Arthur Johnson) were the only Council candidates who filed notice of their candidacies in accordance with Article V of the Goshute Constitution, and were thus the only candidates whose names appeared on the election ballot. In an unusual turn of events, however, the appellees were not victorious in the election. Hubert Steele, Jim Steele, Henry Pete, and two other persons were able to wage a successful write-in campaign among the small number of Goshute voters and received the largest number of the votes at the election.

Since the election, the Election Board has not certified any candidates as being duly elected, and thus officially has taken no position on the write-in issue. The Goshute Constitution requires such a certification within five days after an election. On June 8, 1972, Hubert Steele, Jim Steele, Henry Pete, and Leo Pete held a purported Business Council meeting at which they scheduled a new Council election and appointed a new Election Board. The new Election Board also has not certified any candidates as elected in the April 29th election, nor has the second election ever been held. The four members of the recalled Council have continued to hold over and to function as the Business Council throughout these proceedings.

In addition to petitioning the Election Board for certification as winning candidates, the appellees, prior to bringing this action, attempted to secure recognition from the Bureau of Indian Affairs as the duly elected members of the Business Council. Their attempt ended at the Phoenix Area Office, however, with a ruling from the Area Director that their appeal was premature in view of the fact that no winners had been certified by the Election Board. Although Department of the Interior Regulations provide for additional appeals to the Commissioner of Indian Affairs and the Secretary of the Interior [25 C.F.R. § 2.1 et seq.], the appellees chose not to pursue them.

■■ We have noted in earlier cases that the Indian Civil Rights Act was directed primarily to the administration of justice by tribal authority, rather than to tribal governmental structure, office-holding, or elections. Slattery v. Arapahoe Tribal Council, 453 F.2d 278 (10th Cir.). The rights mentioned in the Act were created between tribal authority and members of the tribe. The Act commences by stating that: "No Indian tribe in exercising power of self-government shall . . . ." The Act tracks to some extent the language of the United States Constitution, but this does not necessarily mean that the terms "due process" or "equal protection" as used in the Act carry their full constitutional impact. As we observed in Groundhog v. Keeler, 442 F.2d 674 (10th Cir.), which was a case in which the manner of selection of the Principal Chief of the Cherokee Nation was challenged, the legislative history of the Act makes it clear that the provisions of the Fifteenth Amendment and certain procedural provisions of the

Fifth, Sixth, and Seventh Amendments as well as some aspects of Fourteenth Amendment equal protection were not meant to be included among the enumerated rights. But we do not reach the question of the application of the Indian Civil Rights Act because the availability of any remedy in the federal courts has certain prerequisites which the trial court did not here require the parties to meet. This we must hold to be error.

■■ The plaintiffs have asked the courts in effect to make the initial decision as to a detail, albeit an important one, in the mechanics of a tribal election. Whether or not write-in candidates should be permitted to run at the election of the Business Council would seem to be a question well within internal tribal matters, political matters, and upon which the Goshute Tribe should make a decision before intervention by the federal courts. The resort to the courts under the circumstances before us was premature, especially in view of the presumption against intervention in tribal election matters. It is obvious that individual members of the Tribe have recourse to the courts at the proper time if they can allege a cause of action. The plaintiffs here have not demonstrated that this is the proper time for the reason stated above—that the Tribe has not yet really decided the question sought to be brought before the court, and this litigation has forestalled further consideration by tribal officials. The matter sought to be brought before the court prior to a final tribal decision does not present a controversy in justiciable form. *See* Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L. Ed.2d 947. The court cannot or should not make a decision in the absence of a clear case or controversy. *See* Grand Canyon Dorries, Inc. v. Walker, filed August 20, 1974, 500 F.2d 588 (10th Cir.). *See also* United States v. Fruehauf, 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed. 2d 476, and Rescue Army v. Municipal Court, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666.

As a reason for hearing the suit, the trial court found that there was no specific tribal agency nor procedure to hear a controversy such as this. There was no testimony taken, and instead there was a short stipulation of facts which is not helpful on this point. The court had before it the Goshute Constitution, the Notice of Election, List of Candidates, the ballot, and affidavits by various persons as to whether write-in candidates were permitted in the elections conducted by other tribes. The trial court, in failing to find specific provision for a problem such as this, assumed there was no way in which the Tribe could resolve the matter. The trial court said: "A judicial system for the hearing of matters such as those in question apparently does not exist." The trial court then assumed that "most likely" the matter would come before the Business Council. The court thus concluded that "tribal remedies appear inadequate and need not be exhausted." It makes no difference on this point whether or not the matter would come before the Council as it would be the basic agency, and its decision is subject to review through established channels. A start must be made.

■ Thus there should be given to the tribal authorities an adequate opportunity to resolve the problem. This should be done whether or not specific machinery is provided for the resolution of such a particular problem in the Goshute Constitution. The Business Council under the tribal constitution can promulgate and enforce ordinances, and is authorized to create agencies for the enforcement thereof. The Supreme Court has indicated the need to recognize the extent of the authority of a tribe over its own activities. *See* Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251. In any event, the fact that tribal procedures for handling internal political disputes such as this are not specifically provided for in the tribal constitution does not justify immediate intervention by the courts. Inherent in the authority to govern itself is the authority of the tribe to determine the manner in which differences are resolved and the manner in which its leaders are selected. The

scope of this authority may ultimately have to be tested under the Indian Civil Rights Act; however, as we observed in Groundhog v. Keeler, and again in Slattery v. Arapahoe Tribal Council, the Act was intended to interfere only minimally with the tribal political processes. Applying this standard as to both time and substance, we must hold that the instant controversy demands in the first instance an opportunity for a tribal solution.

No candidates have been certified, and it may be inferred from the record that the new election was not held by reason of this suit, and a certification of election was likewise forestalled. A motion was filed for a temporary restraining order to prevent defendants from acting in any official capacity. The motion was referred to by the trial court in its ruling on a motion to dismiss, with an indication that a ruling would be made, but it was not thereafter ruled upon according to the record before us. It must be concluded that the result thereof was that the "new" election was not held and no candidates were certified. The intervention of the courts thus prevented a new election which could well have been an answer to the basic problem of who were to be members of the Council without the need to then resolve the write-in issue. Thus if this was a tribal solution, it was aborted by the litigation; if it was not, then there has been made evident no official tribal position. A certification could also have been a decision, and it was likewise precluded although it is apparent also that other prerequisites may exist.

In view of the time of the commencement of this litigation, we do not have a situation where the plaintiffs were faced by inaction of an extended duration, and the consequences thereof are not before us. It is, however, apparent that inaction of the tribal officials cannot prevent an ultimate resolution of the problem administratively or by the courts. As to the delay, the plaintiffs allege they petitioned that they be declared elected (certification) on May 3d. Also the record shows that the holdover Council met on June 8, 1972, and called the new election. This suit was filed on July 25, 1972.

On a somewhat different and separate point, an additional reference must be made to the allegations of the complaint in the context of our prior decisions. We have quoted the portion of Article V, Section 5 of the Goshute Constitution sought to be interpreted by the plaintiffs. While it establishes a filing requirement for Business Council candidates, it does not indicate whether that requirement is a prerequisite to being elected to office or simply a method of having one's name placed on the ballot. Either construction seems plausible, and we know of no principle of due process or equal protection that would unerringly favor one over the other. Neither do we know of a theory of due process or equal protection that demands or proscribes the use of write-in ballots. While we recognize that there may be some additional facts in this case which could enlarge the issue beyond the simple choice of whether or not to recognize write-in ballots, that choice is the basic issue raised by the allegations of fact in the complaint. This court in Slattery v. Arapahoe Tribal Council, 453 F.2d 278 (10th Cir.), held that the pleadings of the parties there did not assert the existence of any facts to show a deprivation of rights under 25 U.S.C. § 1302. Thus the pre-Indian Civil Rights Act rule expressed in Martinez v. Southern Ute Tribe, 249 F.2d 915 (10th Cir.), was applied. (*See also* Motah v. United States, 402 F.2d 1 (10th Cir.), and Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 321 F.2d 767 (10th Cir.)). The court expressly declined to decide whether 25 U.S.C. § 1302(8) was applicable to the tribal enrollment practices in view of the allegations in the complaint. This court in Groundhog v. Keeler, 442 F.2d 674, again found that the complaint did not state facts showing a violation of the Indian Civil Rights Act. Here again we are in a similar situation, and, in addition, are at the very most in only a preliminary stage of the dispute. The pleadings

show that there was no definitive response by tribal authorities to the issue before the suit was filed, and the controversy was not framed before the suit was filed. It had not really become a justiciable dispute.

The judgment must be reversed with directions to dismiss the cause without prejudice.