George TAKES GUN, Francis Stewart, Gerald Reed, Charles DeCrane, Warren John Alden, William House, Clem Goes Ahead, Hugh Little Owl, Ferole M. Pease and Kathryn Pretty Weasel, Plaintiffs,

v.

The CROW TRIBE OF INDIANS and Forrest Horn, acting as Chairman of the Crow Tribal Council, Defendants.

No. CV–77–136–BLG.

United States District Court,
D. Montana,
Billings Division.

April 11, 1978.

Douglas Y. Freeman, Hardin, Mont., for plaintiffs.

Thomas K. Schoppert, Lynaugh, Fitzgerald, Schoppert, Skaggs & Essman, Billings, Mont., for defendants.

## MEMORANDUM AND ORDER

BATTIN, District Judge.

The plaintiffs are all former employees of various programs sponsored by the Crow Tribe. They filed this suit seeking "a Writ of Mandate[1] . . . requiring defendants to reinstate plaintiffs to their positions of employment with the Crow Tribe of Indians; requiring defendants to promptly pay plaintiffs all compensation due them under their contracts during their period of termination and restoring all of their employee benefits due them under their contracts." The complaint also seeks damages and exemplary damages, costs, and attorney's fees.

The defendants have filed a motion to dismiss for lack of jurisdiction and an alternative motion for summary judgment on the basis of an alleged failure to exhaust tribal remedies. The plaintiffs have filed an amended complaint which essentially moots the jurisdictional questions raised by the motion to dismiss.[2] Therefore, the only question for decision here is whether this action is barred by the failure of the plaintiffs to exhaust their tribal remedies.

The plaintiffs allege jurisdiction in this Court under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302(8), and 28 U.S.C. § 1343(4), which provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

---

1. The writ of mandamus was abolished by F.R. Civ.P. Rule 81(b). However, the complaint prays for "such other and further relief as to the Court may seem just and proper." Rule 81(b) recognizes the availability of relief in the nature of mandamus, so the pleading error is not significant.

2. The original complaint alleged federal question jurisdiction under 28 U.S.C. § 1331 and a cause of action under 42 U.S.C. §§ 1983, 1988. Neither allegation was well taken, and plaintiffs' amended complaint deleted both. The motion to dismiss those aspects of the complaint will therefore be denied as moot.

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

This Court has recently held that § 1343(4) is an affirmative grant of jurisdiction to decide ICRA cases. *Shields v. Tribal Executive Board*, Case No. CV–75–133–HG (unpublished Opinion, December 5, 1977). This is in accord with the majority of the Circuits which have considered the issue. *See, Howlett v. Confederated Salish and Kootenai Tribes*, 529 F.2d 233, 236 (9th Cir. 1976); *Janis v. Wilson*, 521 F.2d 724, 726 (8th Cir. 1975). Since an affirmative grant of subject matter jurisdiction exists, the only question is whether this Court should allow the Tribe to decide the matter in the first instance.

### I. *Tribal Judicial Remedies*

The case most often cited for the proposition that a litigant must exhaust his tribal remedies before bringing an ICRA action in federal court is *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140 (8th Cir. 1973).[3] Plaintiffs there brought suit to recover for an allegedly illegal seizure and sale of certain personal property securing an FHA loan. The District Court dismissed the complaint for failure to exhaust remedies in tribal court. The Eighth Circuit affirmed in part, holding that in general a litigant may be required to exhaust his tribal remedies. The Court analyzed the problem as follows:

> In order to determine whether the district court properly dismissed the action, this Court is required to answer three questions: (1) What, if any, tribal remedies exist? (2) Should an exhaustion requirement generally be applied in a case such as this? (3) If exhaustion is generally required, is it appropriate to require exhaustion in this case?

482 F.2d at 1143.

The Court initially found two distinct remedies to be in existence under the Cheyenne Law and Order Code, *viz.*, appeal of the tribal court order foreclosing on the security interest in their property, and alternatively a separate lawsuit in tribal court collaterally attacking the order.

Since tribal remedies were available, the Court then considered whether a general policy requiring exhaustion of such remedies exists. In reviewing the applicable authority, the Court concluded that federal policy favors a strong, autonomous Indian judiciary, and that such a policy is furthered by a requirement that Tribal remedies be exhausted. However, the Court stated:

> [E]xhaustion is not an inflexible requirement. A balancing process is evident; that is weighing the need to preserve the cultural identity of the tribe by strengthening the tribal courts, against the need to immediately adjudicate alleged deprivations of individual rights.

*Id.* at 1146.

The Court then analyzed the case against the backdrop of Cheyenne law and custom and concluded that the case at bar was an appropriate one in which to require exhaustion. *Id.* at 1148.

In the present case, the only real controversy is over whether a meaningful tribal remedy in fact exists. The plaintiffs contend that the Crow Court of Indian Offenses is a court of limited jurisdiction, and that it lacks the power to adjudicate cases against the Tribe. It is therefore urged that no remedy exists in tribal court.

▪ In order for an exhaustion requirement to be applied, it must appear that a *meaningful* tribal remedy exists. Parties are not required to exhaust remedies which are available in form only, nor are they required to attempt litigation under circum-

---

**3.** *O'Neal* was cited with approval in *Howlett*, 529 F.2d at 240, for the proposition that exhaustion is generally required. The three-step approach advocated in *O'Neal* was adopted by our Circuit Court of Appeals in *St. Marks v. Chippewa-Cree Tribe*, 545 F.2d 1188, 1189 (9th Cir. 1976.)

stances in which such litigation would clearly be futile. *See, St. Marks v. Chippewa-Cree Tribe*, 545 F.2d 1188 (9th Cir. 1976); *Howlett*, 529 F.2d at 240; *United States ex rel. Cobell v. Cobell*, 503 F.2d 790 (9th Cir. 1974), *cert. denied sub nom. Sharp v. Cobell*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975). Thus, if a tribal court exists, but cannot provide a remedy, these plaintiffs need not waste the time required to acquire a formal declaration to that effect by the tribal court.[4]

■ Unlike the Cheyenne Tribe in *O'Neal*, the Crows have not adopted and formalized a law and order code.[5] Rather, they are served by a Court of Indian Offenses created pursuant to 25 C.F.R. Subpart B, Chapter 11. The civil jurisdiction of that court is defined in 25 C.F.R. § 11.22C:

> The Court of Indian Offenses shall have jurisdiction of all suits wherein the parties to the action are members of the tribe or tribes within their jurisdiction, and of all other suits between members and nonmembers which are brought before the courts by stipulation of both parties.

This case presents a suit by members of the tribe against the tribe itself, and against Forrest Horn "Acting as Chairman of the Crow Tribal Council." It is therefore not a suit between members of the tribe, and § 11.22C does not grant subject matter jurisdiction to allow the Court of Indian Offenses to decide it.

■ Defendants argue that the tribal court may assert jurisdiction pursuant to 25 C.F.R. § 11.23(a), which allows the tribal court to apply "any laws of the United States that may be applicable, any authorized regulations of the Interior Department,

and any ordinances or customs of the tribe, not prohibited by such Federal laws." It is contended that since the tribal court may, under this section, apply the ICRA, a remedy exists in that court. I find the argument unconvincing. The fact that a body of substantive law exists which might provide a remedy in a particular case does not give a court the power to decide the case. An analogy might be drawn to cases arising "under the Constitution, laws, or treaties of the United States," but in which the amount in controversy does not exceed $10,000. *See*, 28 U.S.C. § 1331. The fact that federal law protects a right or creates a remedy in such a situation does not grant subject matter jurisdiction to the federal courts to decide it. I therefore conclude that no remedy exists in tribal court.

■ Defendants argue that plaintiffs are nevertheless required to make an *affirmative attempt* to litigate this matter in tribal court. It is conceded that no such attempt has been made. However, my reading of the cases suggests that the argument is without merit. The case most nearly in point is *United States ex rel. Cobell v. Cobell*, 503 F.2d 790 (9th Cir. 1974), *cert. denied sub nom. Sharp v. Cobell*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975), a case concerning habeas corpus relief under the ICRA. The Cobells were members of the Blackfeet Tribe. In 1972, they were divorced in state court, with temporary custody of the couple's two minor children awarded to the father. The state court later modified the custody order and awarded the children to the mother, who took them to the Blackfeet Reservation. The order modifying custody was then reversed by the Montana Supreme Court, which restored the prior temporary custody arrangement. When

---

4. In *McCurdy v. Steele*, 506 F.2d 653 (10th Cir. 1974), the Court held that lack of specific tribal machinery should not vitiate the exhaustion requirement. Rather, the Court felt that the tribe should be given the opportunity to test the extent of its own powers before the Federal judiciary becomes involved.

Here, the *McCurdy* rationale does not seem applicable. The regulation which defines the jurisdiction of the Court of Indian Offenses was promulgated by a federal agency. Its construction is a question of Federal law.

5. Defendants indicate that such a code has been promulgated, but that ratification by the tribal council has not been acquired.

the mother refused to surrender custody, the tribal court supported her by enjoining the removal of the children from the reservation. The father then sought a writ of habeas corpus from this Court directing the mother to surrender the children.

This Court issued the writ, and the Ninth Circuit affirmed. On the exhaustion question, the Circuit adopted this Court's approach virtually verbatim, holding that the general exhaustion requirement does not mean that a party must formally exhaust channels which hold no substantial possibility of offering relief. The Court specifically adopted the holding of this Court that:

> [T]he petitioner had no effective remedies available to him in Tribal Court. That remedies are available in theory, but not in fact, is not synonymous with failure to exhaust remedies. That ineffective and meaningless procedures were available to petitioner does not preclude his seeking a writ of habeas corpus.

*Id.* at 794.

In *Cobell*, the effectiveness of the tribal court procedure was vitiated by the fact that the tribal judge stated that he "had issued the restraining order to test tribal jurisdiction, and that only a federal court order would cause him to rescind the action." *Id.* The Court concluded that the tribal remedy was only theoretical and not practical. If anything, the facts in this case point more strongly to the conclusion that exhaustion would be futile, since in this case, unlike *Cobell*, lack of jurisdiction removes even the theoretical possibility of a tribal remedy.[6]

More to the point, *Cobell* illustrates the error of defendants' argument that an af-

firmative effort to exhaust is necessary. The case stands for the proposition that a party need not comply with the formalities of exhaustion if the tribal system affords no real hope of relief. That is exactly the case here. The Court of Indian Offenses is simply not empowered to decide cases in which the tribe is a party. I therefore conclude that no affirmative attempt at exhaustion of tribal judicial remedies need be shown.

Defendants' policy arguments do not alter this conclusion. It is contended that this case presents a matter peculiarly within the cognizance of the tribe, and that acceptance of jurisdiction by this Court would result in a multiplicity of such suits. Further, defendants contend that the policy of tribal self-government which gives rise to the exhaustion requirement will be frustrated by a finding that exhaustion is not required. The short answer to these arguments is that the Crows have it in their power to correct these problems through their law and order code, which, when adopted, will replace the provisions of 25 C.F.R. Chapter 11. Therefore, the vindication of the Crows' interest in self-government lies in their own hands. When they adopt tribal court procedures to handle cases like this, the Court should require exhaustion. Until then, I conclude that the law does not require a plaintiff to exhaust formal tribal procedures which can offer no relief.

## II. Tribal Administrative Procedures.

■ It is clear that the exhaustion requirement applies equally to tribal administrative and judicial remedies. *See, Janis v.*

6. The defendants argue that the Court of Indian Offenses properly asserted jurisdiction in two actions similar to the one at bar. One of these cases is captioned *Crow Tribe ex rel. White v. Standsoverbull* and it appears to suffer none of the infirmity of the case at bar, since both parties are individual tribal members. *Smith v. Crow Tribal Council* stands on a different footing, since the tribe is a nominal party. Both cases were resolved by stipulation of the parties and dismissed.

As the above analysis indicates, it is my opinion that the Court of Indian Offenses lacks jurisdiction over an action by an Indian against the tribe to compel the tribe to rehire plaintiffs with back pay. I cannot see how the vitality of the tribal courts will be furthered in any way by a remand to allow that court to decide a case which is in excess of its jurisdiction.

*Wilson*, 521 F.2d 724, 726–27 (8th Cir. 1975). *Janis* presented allegations of unlawful discharge, as this case does. The Eighth Circuit there noted that tribal administrative remedies existed and were exhausted. *Id.* at 727. Here, the status of any administrative remedy is simply unclear. In such circumstances, the defendants having raised the issue, the responsibility falls upon the plaintiffs to demonstrate that either no administrative remedies exist, or that the existing remedies have been exhausted. Therefore, the complaint herein will be dismissed without prejudice to the refiling of this action should it appear that no administrative remedies exist, or that relief is not forthcoming in tribal court.[7]

In consideration of the foregoing,

IT IS ORDERED that defendants' motion for summary judgment be, and the same hereby is, granted.

The Clerk is directed to enter judgment by separate document, dismissing the amended complaint herein without prejudice.

---

7. Dismissal is without prejudice since exhaustion does not reach the merits of the case, but rather affects its ripeness for decision. *See,* *McCurdy v. Steele*, 506 F.2d at 656.