OPINION

On February 28, 2013, following a hearing, this Court issued a writ of habeas corpus and ordered Petitioner’s immediate release from incarceration upon finding his detention was illegal due to violations of both the Navajo Nation Bill of Rights and the sentencing provisions of Title 17. This opinion now sets forth the violations and clarifies a defendant’s due process and procedural rights in a revocation of probation proceeding.
I
The relevant facts are as follows. For the offense of battery, Petitioner was sentenced to 365 days of incarceration and imposed a fine of $500. The jail sentence was suspended to 365 days probation with conditions. Three months into the probation period, the Navajo Nation filed a petition to revoke probation alleging that Petitioner violated his probation conditions by failing to be a law-abiding citizen; leaving the jurisdiction of the Navajo Nation without prior approval; and possessing or using intoxicating liquors or controlled substances without medical treatment. Kayenta Family Court’s Response to Writ of Habeas Corpus at 2 (February 27, 2013)(citing Petition to Revoke Probation, KY-CR-12-139, July 18, 2012), The Nation further stated that Petitioner failed to check in on July 9, 2012, but called on July 10, 2012 to inform his probation officer that he had left Kayenta. The docket number of the underlying battery charge was KY-CR-12-017. The trial court assigned a different criminal docket number, KY-CR-12-139, to the revocation of probation proceedings. A copy of the revocation petition was provided to Probation and Parole Services (PPS) to be mailed to Petitioner “when he discloses his current address.” A summons was not issued.
Instead, on July 19, 2012, a day after the filing of the petition to revoke probation, a bench warrant was issued for Petitioner’s arrest with findings that “[d]efendant failed to comply with conditions and terms of Probation.” Bench Warrant, KY-CR-12-139 (July 19, 2012). On November 27, 2012 Petitioner was arrested on the bench warrant and served with a notice of hearing and criminal summons ordering him to appear the very next day for a revocation hearing on November 28, 2012 to “answer” the petition which was attached to the notice/summons. The trial court also issued an Order of Temporary Commitment, ordering Petitioner to be held pending the revocation hearing, but setting forth no specific findings why detention was necessary.
The judge began the November 28, 2012 revocation hearing by announcing that be *174 cause Petitioner’s attorney, the public defender, had withdrawn legal representation due to Petitioner’s non-cooperation in an unconnected criminal proceeding, “any legal representation in this proceeding would be at his own cost.” Audio Recording of Proceeding, KY-CR-12-139 (November 28, 2012). The judge then asked Petitioner how he wished to proceed, to which the Petitioner did not respond. The judge then asked him if he wished to proceed without an attorney, to which Petitioner answered “yes.” The audio of the hearing shows that the defendant told the judge that he is a non-member Indian whose family had once lived in Kayenta, but had recently moved; as a result, he had been homeless for more than two weeks in Kayenta because PPS had told him he could not leave the area. The defendant also told the trial court that when he did leave the area in order to find shelter, he informed his probation officer, gave the reasons why he had to leave, and remained in contact with his probation officer by phone.
Without first explaining to Petitioner the nature and cause of the proceedings, or that his responses may result in his immediate incarceration, the judge read the petition out loud and, after each paragraph, the judge instructed the Petitioner to answer “true or false,” or that he “understood.” Id, The Petitioner stated “true” or “understood” in response to each paragraph, whereupon the trial court found Petitioner “admitted” to the alleged probation violations, reinstated the original jail sentence of 365 days and remanded the Petitioner to immediate custody of the Department of Corrections.
After being placed back in jail, Petitioner filed several pro se motions requesting credit for jail time served and for the elapsed time he served on probation as a credit against the sentence. On January 10, 2013 the judge denied the motions ex parte, stating that no actual jail time was served in the underlying battery charge of KY-CR-12-017. Petitioner did not immediately receive the January 10, 2013 order of denial because at the time the order was issued, Petitioner was incarcerated several miles away in Chinle. Petitioner filed several further motions, reiterating his previous request, and prompting a motion hearing on January 28, 2013. At the hearing, the judge first rebuked Petitioner for filing several motions with the same request, then verbally denied credit for elapsed time served on probation and informed Petitioner that the law only permits the reinstatement of the original sentence, nothing less. An Order of Amendment followed on February 1, 2013, reiterating the grounds for denial previously set forth on January 10, 2013, with the additional condition that he not contact the victim.
On January 14, 2013, prior to the motion hearing described above, an order was issued sua sponte in the underlying battery charge, in docket matter KY-CR-12-017, that stated “ftjhe original sentence has been revoked and defendant is currently under new sentencing conditions[1] pursuant to KY-CR-12-139 [revocation proceeding].”. Order, KY-CR-12-017 (January 14, 2013) (emphasis added). Subsequently, Petitioner filed a hand-written letter to the Supreme Court that this Court accepted as a petition for writ of habeas corpus, alleging he is being held illegally for probation revocation despite his probation being *175 “closed-out (finished),” his denial of an attorney at the revocation hearing, and his “completed” terms and sentencing with the Navajo Nation. A hearing on the writ was held on February 28, 2013, and Petitioner was released. This decision now follows.
II
Pursuant to 17 N.N.C. §§ 224 and 1818(A), courts have the discretion to suspend all or part of an offender’s sentence and release the Petitioner on probation with conditions. Any person who violates his or her probation pledge shall be required to serve the original sentence. 17 N.N.C. § 1818(B). In the ease before us, what is being reviewed is not the authority of the trial court to impose probation or the authority to reinstate the original sentence upon violation, but a defendant’s procedural due process rights after a probation revocation petition is filed.
The Navajo Rules of Criminal Procedure outlines the court procedure for revocation of probation proceedings. The petition to revoke probation originates with the probation officer. If a probation officer concludes there is reasonable cause to believe that the probationer has violated a written condition or regulation of probation, the probation officer recommends to the prosecutor to file a petition to revoke probation. Nav. R. Cr. P., Rule 53(a). After the petition is filed, the trial court is to issue a summons directing the probationer to appear at a revocation hearing. The contents of the summons must state the essential facts constituting the probation violation and order the defendant to appear at a specified time and place for an initial appearance. The summons must be served by delivering a copy to the defendant personally or by certified mail. Nav. R. Cr. P., Rule 53(c). However, Nav. R. Cr. Pro., Rule 53(b) also provides, “[i]f the petition on its face shows probable cause to believe that the probationer will not appear in response to the summons, the court may issue a warrant for the probationer’s arrest.”
With defendant’s due process and fundamental law rights in mind, we address the following errors.
Probable Cause to Issue a Bench Warrant. Normally, pursuant to Nav. R. Cr. P., Rule 9(b), a bench warrant may issue when a defendant actually fails to appear in response to a summons after he has been duly served. Nav. R. Cr. P., Rule 53(b) by-passes this requirement and allows a bench warrant to issue without waiting for defendant to actually fail to appear, or even that defendant be served with the summons only if the face of the petition itself shows “probable cause to believe that the probationer/parolee will not appear in response to the summons.” Probable cause, as applied to arrests, “is the existence of circumstances which would lead a reasonably prudent man to believe in guilt of arrested party; mere suspicion or belief, unsupported by facts or circumstances, is insufficient.”[2] In order not only to dispense with a defendant’s due process right to service of a petition and summons for probation revocation, but also to arrest that defendant for likely being unresponsive to a future event, Rule 53(b) must be strictly construed to show circumstances rising to the level of probable cause. In this case, PPS simply stated that Petitioner had left the jurisdiction without prior approval, when the facts show that PPS had received a phone call from him regarding his homelessness and his need to find shelter. There is no indication that PPS, having learned of his circumstances through Petitioner directly, *176 tried practically to address or accommodate his shelter issues. The wording of the conditions in the Judgment and Mitti-mus permit PPS discretion to approve of a defendant leaving the jurisdiction and to provide other accommodations. Knowing Petitioner’s homeless circumstances, PPS could have set up a call-in schedule for Petitioner, but there is no indication that PPS did so. Probable cause under Rule 53(b) requires, basically, a showing of futility in getting defendant to respond, meaning either that the defendant has disappeared with no way to contact him or her, or that defendant has shown by egregious past conduct that he or she will not appear in future. Neither situation is present in this case. The revocation court erred when it issued a bench warrant without making a probable cause determination.
Diñé bi beenahaz’áanii. Petitioner in this ease was homeless. A fact of reservation life is that many of our people live in very constrained financial circumstances, relying on their families and extended families for shelter and assistance. Here, petitioner is a non-member Indian whose family, formerly residing in the Kayenta area, entirely left the reservation, leaving him without shelter and support in winter months. We take judicial notice that no alcohol abuse treatment centers are located in the Western Agency area, making services unreachable for those without long-distance resources. The record is clear that Petitioner’s desperate homeless situation was known to PPS. Guided by Diñé bi beenahaz’áanii which emphasizes restorative justice, the prosecution and PPS here had the discretion and responsibility to find a solution for Petitioner other than seek reinstatement of his original jail sentence. Diñé bi been-ahaz’áanii imposes a duty on our government to provide avenues for restoration. Diñé justice “throws no one away.”[3] Diñé bi beenahaz’áanii gives our judicial system greater options and responsibilities than strictly applying punishments. In any system, one does not place unreasonable burdens on a defendant. In a restorative justice system, a close eye should be kept on the defendant with an obligation to help defendants obtain services, even beyond the locality if necessary. Such assistance gives a community hope by ensuring rehabilitative services so that offending members can be treated rather than merely punished or expelled. It is a fundamental right of our people to expect that their governmental agencies pursue restorative measures, especially where dire living circumstances are beyond a defendant’s control, as in this case.
Service of Petition and Summons. In this case, the trial court provided the petition to the PPS to later “mail” to defendant when his mailing address is known. Firstly, when no probable cause exists to issue a bench warrant, a summons and notice of hearing must be properly issued and served. If a defendant is homeless, the trial court must ensure that extra effort is made to serve him or her, whether by enlisting the help of relatives or friends of the defendant, or other rea *177 sonable methods. In any case, no bench warrant for non-appearance may issue without issuance of a summons and reasonable attempts at service. Unless Petitioner has entirely absconded, leaving no means of contact, a defendant has a due process right to receive proper notice that revocation proceedings have been initiated against him. Here, Petitioner phoned PPS about his need to leave the area to find shelter. However, PPS recommended revocation and failed to inform the trial court about Petitioner’s phone calls, leading to an assumption that Petitioner had fled and that issuance of the bench warrant was necessary. Having never been served with a summons and petition, Petitioner was without notice of the revocation proceedings against him. The Prosecutor’s delivery of the petition to PPS for subsequent service to Petitioner was not proper. Petitioner was only served with the summons and petition in this case after his arrest and a day prior to the actual hearing. In short, Petitioner’s right to due process was violated by the issuance of a bench warrant without probable cause, lack of notice of the proceedings, and lack of proper service. PPS failed to provide complete information to the Prosecutor, and the trial court erred in issuing the bench warrant without first issuing a summons after the filing of the petition.
Rule 54(a) Rights at Initial Appearance. Pursuant to Nav. R. Cr. P., Rule 54, the first hearing in a probation revocation proceeding is defendant’s “initial appearance” at which the revocation court, in respecting all of the legal rights that are owed to a person, is mandated to address the probationer personally and determine that the probationer understands an enumerated list including the nature of the alleged probation violations, his fundamental rights, and the government’s burden of proof. Nav. R. Cr. P., Rule 54(a). The fundamental rights include “the right to counsel [at the revocation hearing] if the probationer is not represented by counsel, the right to cross-examine witnesses who testify against him; and his right to present witnesses in his behalf.” Rule 54(a). If the probationer wishes to waive his rights under Rule 54(a) and admit the violations, the trial court shall determine that his admission is voluntary and not the result of force, threats or promises, and that there is factual basis for the admission. Nav. R. Cr. P., Rule 54(b). Per Rule 54(b), the waiver of rights, including the right to a revocation hearing, must precede the reading of the petition and any admissions of alleged violations. Id. The audio recording of the initial appearance in this ease shows that the revocation court failed to meaningfully discuss any of the Rule 54(a) listed rights with Petitioner. Instead the judge ruled Petitioner would not be appointed the public defender for this proceeding apparently as a punishment for his demeanor in an unrelated proceeding. Instead of giving Petitioner an opportunity to be appointed counsel, the judge informed Petitioner that he could not have any counsel unless he paid for a lawyer himself, which Petitioner, being homeless, certainly could not afford. In its response pleading, the revocation court asserts that Petitioner “elected to proceed without the assistance of counsel” and by doing so Petitioner “voluntarily waived his right to counsel.” Kay. Dist. Ct. Response at 5 (February 27, 2013). However, because the judge had just informed Petitioner could only have counsel at his own expense, we disagree that Petitioner’s election was a voluntary waiver under the circumstances.
The right to an attorney is one of the most important protections guaranteed by the Navajo Bill of Rights. While this Court has long recognized the ability *178 of a defendant to waive a fundamental right, e.g., Stanley v. Navajo Nation, 6 Nay. R. 284, 289 (Nav.Sup.Ct.1990) (discussing right to trial), as a matter of due process, however, a defendant’s waiver of a fundamental right is held to a high standard. The waiver must be a “knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.” Eriacho v. Ramah Dist. Ct., 8 Nav. R. 617, 624, 6 Am. Tribal Law 624 (2005) (quoting Stanley, 6 Nay. R. at 289). In Eriacho, we noted “[t]hough we originally adopted that standard without reference to Navajo Common Law, we reiterated that [this] standard is consistent with Navajo principles of due process under the Navajo Bill of Rights” and thus expanded Stanley to require meaningful notice and explanation of those rights under the principle of “hazho’ógo ” before the court may recognize the waiver. See id. at 625. (citing Navajo Nation v. Rodriguez, 8 Nav. R. 604, 615-616, 5 Am. Tribal Law 473 (Nav.Sup.Ct.2004)(emphasis added)). “[HJazho’ógo requires a patient, respectful discussion with a suspect explaining his or her rights before a waiver [of those rights] is effective.” Id. at 625 (emphasis added). In this case, not only did the judge not inform the Petitioner of the enumerated Rule 54(a) rights, including the right to counsel, paid or otherwise, the judge actually informed Petitioner that he could not have appointed counsel. Therefore, we find that Petitioner’s purported agreement to proceed without counsel was not “knowing and intelligent” nor have the other notice requirements for the waiver been complied with.
The waiver of rights, including the right to a revocation hearing, must precede the reading of the petition and any admissions of alleged violations, and in order to properly waive these rights, the record must show that the defendant has been fully informed of the Rule 54(a) enumerated matters. See Nav. R. Cr. P., Rule 54(b). Based on the audio recording, the judge merely read the petition and, after each paragraph, simply instructed the Petitioner to answer “true or false,” or that he “understood.” Petitioner was never informed that his responses may be regarded as admissions and that he may be jailed as a result of those admissions by reinstatement of his original sentence. As a result, there is no basis for the judge’s finding on the basis of Petitioner’s “true” or “understood” responses that he admitted to anything. We also consider as error the subsequent issuance of a boilerplate Judgment and Mittimus which contained no mention of the original sentence, suspended sentence, alleged violations of probation, nor written determinations that Petitioner’s purported admissions are voluntary and that there are factual basis for the admissions, as required by Rule 54(b).
Order of Temporary Commitment. We find the issuance of an order of temporary commitment pending a revocation hearing an abuse of discretion due to the complete absence of specific findings why it was necessary. Such an order may be based on 17 N.N.C. § 1812 or Nav. R. Cr. P., Rule 15(d), both of which require specific findings.
“Revocation” of a Sentence. Finally, Petitioner assumed that the original sentence in the underlying battery charge, having been “revoked,” was no longer enforceable in the revocation proceeding. The Petitioner’s understanding is reasonable and his assumption is proper from the plain wording of the January 14, 2013 order. When a sentence is “revoked,” the sentence is cancelled, withdrawn, and no longer in force. While the intended meaning by the trial court may have been to “close out” the underlying battery matter for case management pur *179 poses, this Court finds the due process violations and the confusion created in this matter so numerous that it is inclined to give the January 14, 2013 order in KY-CR-12-017 its plain meaning. The confusion was exacerbated by the revocation court conflating two separate proceedings: the underlying criminal battery case and the revocation proceeding. When the January 14, 2013 order “revoked” the underlying sentence for the battery charge, logically, and for due process reasons it would no longer be possible to reinstate the original jail sentence. The Court will affirm the plain meaning of the January 14, 2013 order. The procedural mess created by the trial court’s own language need not be further dissected. For the future, this Court reminds the trial courts that a revocation action is an original proceeding limited to whether or not the original sentence should be reinstated.
Finally, we note that the Petitioner has raised other arguments in his petition concerning the exercise of the trial court’s discretion. As this Court has dealt in great length with the numerous procedural errors that have violated the Petitioner’s fundamental rights to due process in this case, the Court need not reach these remaining arguments.
Ill
The Petitioner having been released from his illegal detention, this case is CLOSED.

. Given the confusing language, we assume what the judge meant was that the jail sentence was no longer in effect but that the probation conditions were being addressed under the revocation proceeding, rather than a modified sentence that would trigger Nav. R.Crim. P. Rule 50(e).

. Black's Law Dictionary, 834 (6th ed. 1994)

. Accountability and Returning the Offender to the Community: Core Responsibilities of Indian Justice, April 21, 2008 Memorandum to the Senate Committee on Indian Affairs on the proposed Indian Country Crime Bill Submitted by an Inter-Tribal Workgroup comprised of the Navajo Nation, The Hopi Tribe and Fort McDowell Yavapai Nation, p. 3, as approved by the Intergovernmental Relations Committee of the Navajo Nation Council, Resolution No. IGRMY-109-08 (May 19, 2008) (In the Indian justice context, restorative justice is not necessarily equated with diversion or non-convictions. In this context, restorative justice requires full accountability, community participation, and the necessary resources to bring an offender back. Indian justice throws no one away.).